## CENTRAL POWER & LIGHT CO. et al. v. STATE.

### No. 9299.

Court of Civil Appeals of Texas. Austin.

Oct. 28, 1942.

Rehearing Denied Nov. 18, 1942.

Arnold & Arnold, of Texarkana, Ark., Wagstaff, Harwell, Douthit & Alvis, of Abilene, Kemp, Lewright, Dyer, Wilson, & Sorrell, of Corpus Christi, and Looney & Clark, Charles F. Herring, and Everett L. Looney, all of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and Billy Goldberg, Morris Hodges, Fowler Roberts, Cecil D. Redford, and Cecil C. Rotsch, Asst. Attys. Gen., for appellee.

McCLENDON, Chief Justice.

Chain Store Tax Law case (Chap. 400, p. 1589, G.L. 1st C.S. 44 Leg., 1935, Vernon's Ann.P.C. Art. 1111d). The suit was by the State against three operating subsidiary public utility corporations: the CP&L (Central Power and Light Company), the SW (Southwestern Gas and Electric Company), and the WT (West Texas Utilities Company). Each of the defendants had paid the tax for the years 1936–1940 inclusive based upon the number of stores operated by each as separate chains. The suit was for the difference between the amounts paid and the amounts allegedly due based upon the total number of stores operated by the three defendants as a single chain, allocated in proportion to the number of stores operated by each, as in the Safeway case. Safeway Stores, Inc., v. Sheppard, Tex.Civ.App., 158 S.W. 2d 319, error refused. The case was tried upon agreed stipulation and the State recovered the full amount sought. The three defendants have appealed.

Appellants have briefed the case under 9 points, which we will consider in somewhat different order than as presented.

Points 4, 6, 7, 8 and 9 have already been adjudicated adversely to appellants, and it is not the function of this court to reconsider them. See the Humble case. Humble Oil & Refining Co. v. State, 158 S.W.2d 336, error refused. We will merely state

these points and refer to the cases in which they were adjudicated.

Point 4 urges that the parent and not the subsidiary corporation is liable for the tax. The Safeway case expressly held that the language of Sec. 6 of the Act " * * * corporation * * * which is controlled or held with others by majority stock ownership," etc. "clearly imposes liability upon the subsidiary." [158 S.W.2d 321.]

Points 6 and 7 are to the effect that the Act is unconstitutional because of indefiniteness in not providing: 6) Who shall pay the tax, and 7) how it shall be allocated. These points were expressly adjudicated against appellants in the Butt, Butt Grocery Co. v. Sheppard, 137 S.W.2d 823, error refused, and Safeway cases.

Point 8 urges that the Act is violative of Art. VIII, Sec. 2, of the Texas Constitution, Vernon's Ann.St., providing that "all occupation taxes shall be equal and uniform upon the same class of subjects." This point was expressly adjudicated against the appellants in the Chain Store Tax cases. Hurt v. Cooper and McCraw v. S. H. Kress & Co., 130 Tex. 433, 110 S.W.2d 896.

Point 9 urges that the Act is violative of the due process and equal protection provisions of the Federal Constitution. This point was expressly adjudicated against appellants in the Chain Store Tax and Safeway cases.

Point 1 urges that the suit is not maintainable "because the Act requiring licenses for the operation of stores (Chain Store Tax Law) does not create a debt and give a remedy by civil action."

■ We overrule this point upon the holding that the State's right to maintain this suit as a civil action is expressly conferred by Arts. 7076, 7076a and 7098a, Vernon's Ann.Civ.St.

Art. 7076 confers upon the Attorney General the power to bring suit in the name of the state to recover "the penalties provided for by this Chapter [Chapter 2 of Title 122]." It also authorizes the State Tax Board to bring suit in the name of the State for the recovery of "any taxes or penalties provided for by this Chapter * * * found at any time to be delinquent." It authorizes the State Tax Commissioner "to request and receive the assistance of the Attorney General" and the heads and employees of all state departments "to aid in the speedy recovery of such money or penalties due the State under the terms of this Chapter." It requires all departments and agencies of the state government "which are now, or may be charged with the administration and collection of State taxes and license fees, to certify to the State Tax Commissioner * * * the fact of such delinquency. * * *. The venue and jurisdiction of all suits arising hereunder is hereby conferred upon the courts of Travis County."

Art. 7076 was reenacted with amendments by Chap. 192, p. 581, Gen.Laws 43 Leg.(1933). This chapter also enacted Art. 7076a, the pertinent portions of which read: "It is further specifically provided that all of the provisions of this Act shall apply and be applicable to all delinquent State taxes due and owing to the State of Texas, of every kind and character whatsoever, including all franchise, occupation, gross receipts, gross production, gross premiums tax on insurance companies, inheritance, gasoline, excise and all other State taxes which become delinquent other than State ad valorem taxes on property. It is hereby declared to be one of the purposes hereof to impose upon the State Tax Board the additional duty of collecting and aiding in the collection of all delinquent taxes enumerated and referred to herein, and all laws now applicable to the collection of such delinquent taxes, and all powers and authority now possessed by existing officers and agencies of the State Government are hereby, in addition, conferred upon said State Tax Board, as far as the same may be applicable * * *; provided further, that said State Tax Commissioner shall, after the passage hereof, be the chief administrative officer of this Act."

The caption of this chapter reads in part: "An Act for the purpose of strengthening and providing for a stronger and more efficient administration and enforcement of all inheritance, occupation, gross receipts, gross production taxes, gross premiums taxes on insurance companies, gasoline, excise, sales, and all other State taxes, including intangible, and all character of delinquent State taxes other than ad valorem taxes on property."

The emergency clause of the Act recites: "That by reason of the fact that there is much and unparalleled delinquency and an inadequate enforcement of our present occupation, franchise, gross receipts, gross production, inheritance and other tax laws, and the further fact that it is imperative

that said tax laws be strengthened, and that an adequate system of enforcement and collection of delinquent taxes be provided for, together with the fact that the government of the State of Texas is losing millions of dollars annually by reason of such condition, creates an emergency * * *." Section 22.

Art. 7098a reads: "The Comptroller of the State of Texas shall be ex officio Tax Commissioner of the State of Texas. He shall discharge all duties placed upon the Tax Commissioner by any laws now or hereafter in force in this State."

This Article is Sec. 2 of Chap. 12, p. 645, Gen.Laws 46 Leg.(1939), which chapter in effect abolished the office of State Tax Commissioner and amended Art. 7098 by substituting the Attorney General for the State Tax Commissioner as a member of the State Tax Board.

The suit was brought by the State of Texas "acting by and through the Attorney General of the State of Texas, at the instance and request of the Comptroller of Public Accounts of the State of Texas."

Reading the three Articles together (7076, 7076a, and 7098a), we think nothing could be plainer than that this suit was authorized and properly brought.

In Point 2 appellants contend that since all power and authority conferred by the Act was vested in the Comptroller, his action in accepting the lesser payments and issuing licenses to the respective defendants for the years in question is final and not subject to review. It is urged in this connection that his situation is analogous to that of boards of equalization in respect to valuations placed upon property under the ad valorem tax act (Art. 7212), citing State v. Chicago, R. I. & G. R. Co., Tex.Com. App., 263 S.W. 249.

■ There is no analogy between the two acts in this regard. The Chain Store Tax Law is plain, explicit and definite in fixing the absolute and exact amount of the tax. In this respect no discretion is vested in the Comptroller, and his related acts are purely ministerial. He was without any authority to estop or otherwise bind the State in its right to the full amount of the tax as fixed by the Act, by accepting less amounts and issuing the licenses or by any other act of his. See Grayburg Oil Co. v. State, Tex.Civ.App., 50 S.W.2d 355 error refused and authorities there cited.

■ Point 3 urges that the WT was not properly included in the chain because a majority of its stock was not held in common ownership with that of CP&L and SW. The pertinent facts are these: The parent corporation (Central and Southwestern Utilities Company, a Delaware holding corporation) owned the majority of the stock in CP&L and SW, and in the APS (American Public Service Company, also a Delaware holding corporation). The latter owned the majority of the stock in the WT. The contention under this point is that ownership by the parent corporation of controlling stock in the APS, which in turn owned the controlling stock in the WT, did not constitute ownership of controlling stock in the WT. We cannot accept this interpretation of the Chain Store Tax Law. Control through majority stock ownership is potentially as effective mediately, through an intervening holding corporation, as immediately through ones own ownership. To hold otherwise would be to close ones eyes to realities and the obvious and invite evasion of the law by the organization of intermediary holding corporations for each subsidiary.

By Point 5 appellants contend that they are not subject to the tax because they are not taxed under Sec. 5 of the Act since they pay an occupation tax measured by gross receipts and because Sec. 5a is invalid in that it is not sufficiently embraced in the caption of the Act to meet the requirements of Art. III, Sec. 35 of the Constitution.

Sec. 5, which prescribes the character of businesses to which the Act applies and fixes the amount of the tax, provides that such businesses "shall not include * * * any business now paying an occupation tax measured by gross receipts."

The pertinent part of Sec. 5a reads: "Every person, agent, receiver, trustee, firm, corporation, association and/or copartnership opening, establishing, operating and/or maintaining one or more stores or mercantile establishments within this State under the same general management and/or ownership and selling therein any equipment or appliances operated and/or used in connection with any electrical current and/or natural gas and/or artificial gas, whether the same be in connection with the sale of electrical current and/or natural gas and/or artificial gas or not and whether such person, firm, agent, receiver, trustee, corporation, association and/or copartner-

ship be also engaged in the business of furnishing some public utility services or not shall pay the license fees herein above prescribed for the privilege of opening, establishing, operating and/or maintaining such stores or mercantile establishments * * *."

The pertinent part of the caption of the Act reads: "An Act requiring licenses for the operation, maintenance, opening or establishment of stores in this State, prescribing the license and filing fees to be paid therefor, * * * providing for certain exceptions * * * *prescribing license fees for certain utility merchandising service* * * *." (Italics supplied.)

We overrule this point upon each of the following grounds:

1. If it be conceded (which it is not) that Sec. 5a is invalid on account of the insufficiency of the caption to include it, then that section is entirely eliminated and application of the Act to appellants should be considered as though Sec. 5a were not embodied therein. It is not contended (nor could it be) that appellants did not operate "stores or mercantile establishments" as defined in Sec. 5 of the Act. It was stipulated in the agreement upon which the case was tried that each defendant "operated and maintained within this state during all the times involved herein, stores and mercantile establishments in which goods, wares and merchandise of the following character only were sold at retail, to-wit: electric refrigerators, electric stoves, electric fans, electric lights and various other electrical appliances used only in connection with the use of electric current. Such stores consisted of a room on the ground floor of a building with a door opening on the street, and in each of which stores the electrical appliances above mentioned were kept and displayed and offered for sale and sold at retail in connection with its main business, as aforesaid, and in the same room or place where its other business was transacted."

■■ The pertinent exemption of Sec. 5 was of "any business now paying an occupation tax measured by gross receipts." The only occupation tax paid by appellants based upon receipts was that prescribed in Art. 7060, R.C.S., Vernon's Ann.Civ.St. art. 7060, which was upon receipts only from electric light and power in incorporated cities of not less than 2,500 inhabitants according to the next preceding U. S. census. This was not a gross receipts tax upon the business of defendants in that it did not include receipts from business done outside the designated cities, and did not include receipts from any of its business, wherever done, other than the supplying of electric current. The term "measured by gross receipts" is all inclusive and excludes the concept of receipts measured by anything less than all business done.

A utility, which did not operate or maintain a store or other business establishment where merchandise was sold, clearly did not come within the purview of the Act. Where it operated stores for such sale, it paid no receipts tax upon that business. Consequently, it could not fall within the exception. The very purpose of the exception was to relieve from paying two occupation taxes, namely: a sale tax and a chain store tax upon the same merchandising business.

In the Chain Store Tax cases the Supreme Court had under consideration all the exemptions in Sec. 5 in connection with the question whether the Act was discriminatory. As regards this particular exemption the opinion reads [130 Tex. 433, 110 S. W.2d 904]: "The fourth exemption is any business 'now paying an occupation tax measured by gross receipts.' Attention is directed to the fact that the word 'now' is used in that exemption. We need not consider the question of whether the mere fact that a given business is paying a gross receipts tax would justify its exemption from this tax. It appears that the only business which would be exempted under this provision is that of publishing and selling textbooks. With this explanation this exemption falls in the class of those just mentioned and will be upheld upon the same ground that they are upheld."

It is manifest that the Supreme Court did not regard an electric utility, which also operated stores within the meaning of the Act, as exempt by reason of the fact that it paid a gross receipts tax measured only by a part of its business in supplying electric current.

■ 2. We think the caption sufficient to include Sec. 5a even if the words "prescribing license fees for certain utility merchandising service" were eliminated. The business described in Sec. 5a clearly comes within the wording of the caption, "operation * * * stores in this State." While the Section was in effect merely cumulative of Sec. 5, in that its provisions

were already included therein, its purpose may readily be explained as a clarification of the fourth exception in Sec. 5.

3. The words in the title "prescribing license fees for certain *utility merchandising service*" is not misleading but is fairly descriptive of the business of selling appliances in connection with the business of supplying electric current and other utility products by utility corporations. Appellants' contention to the contrary is predicated upon the assertion that the word "service" does not include "sale". While this may be true generally, it is not universally so. The word has a variety of meanings, dependent upon the context, or the sense in which used; and in some instances includes a sale; for example the sale of food by restaurants is usually referred to as "service" although an actual sale is involved. See Goff Co. v. First State Bank, 175 Ark. 158, 298 S.W. 884.

Appellants cite the Humble case (Humble Oil & Refining Co. v. State, Tex.Civ. App., 158 S.W.2d 336, error refused) as holding that the word "servicing" in the phrase "servicing of motor vehicles" (Sec. 5 of the Act) does not include the sale of accessories. That was not the holding in the Humble case. The Humble Oil & Refining Co. contended that "servicing of motor vehicles" had a well defined *trade meaning* in the filling station business and included the sale of motor vehicular accessories. The same as the *general* meaning of the term as applied to that business was contended for in the Standard case. Standard Oil Co. v. State, Tex.Civ.App., 142 S. W.2d 519, error refused. The Humble case held that the general meaning accorded with the trade meaning, and that the term, when accorded its general meaning, did include the sale of accessories. The exemption was denied in the Humble case upon the following interpretation of the Standard case holding: "The decision in the Standard case is clearly grounded upon the proposition that the legislature had itself defined what it meant to imply by the quoted term, and that for purposes of definition resort may not be had to the general meaning (nor, by parity of reasoning, to any other meaning) of the term nor to the practice of service stations in servicing automotive vehicles." [158 S.W.2d 340.]

■ It is a matter of common knowledge that the practice of selling appliances to their customers in connection with supplying their products (electric current, gas, etc.) is quite general, if not universal, among public utility corporations. When such sales are so limited they are held to be germane to the business of supplying these products and not ultra vires the corporate powers. San Antonio Public Service Co. v. State, Tex.Civ.App., 62 S.W.2d 585, affirmed and opinion adopted, Tex.Com. App., 69 S.W.2d 38. "Service" is just as appropriate a descriptive word of this practice of supplying (by sale) of appliances to users of utility products as it is to supplying (by sale) of automotive accessories to purchasers of gasoline at filling stations.

The Humble opinion adverts to use of the definition of the verb "service" given in the 1934 edition of Webster's International Dictionary, and cited by appellant in the Standard case: To perform services of maintenance, *supply,* repair installation, distribution, etc., for or upon; as, to service a car, a radio set, a *ship,* a territory. (Emphasis added.) The same authority gives 30 different definitions, besides numerous sub definitions, of the noun "service", among them: 16a. Supply of needs; use; also formerly utility; as for the service of customers. 19. Act or means of *supplying* some general demand; provision, organization, or *apparatus.* for conducting some public utility, as, gas, railway, telephone, or water *service.* The use of the word in this sense is but a form of metonymy in which the effect (rendition of a service) is used for the cause (sale of utility merchandise); the service consisting in supplying a need incident to the use of the utility product dealt in, but for which such supplying would be ultra vires the utility corporation.

We have for definition not "service" in the abstract, nor in its general sense, but "merchandising service", and that of a limited character: "utility merchandising service." "Merchandise" (the verb) means to trade, buy and sell articles of commerce. It connotes both the act of buying and selling and the thing bought or sold. The expression "utility merchandising service" appeals to us as peculiarly apt in describing the particular merchandising practice in which defendants were engaged; that of supplying their customers (by sale) with appliances (articles of merchandise) that were serviceable in connection with the consumption of the product of defendants' authorized business.

It may be observed that Point 5 (as well as some of the other points) challen-

ges the validity as to them of the entire tax, not merely as to the amounts in suit. It is interesting to note, in this connection, that it has taken the defendant corporations over five years to discover that the Chain Store Tax Law does not apply to them by reason of their exemption under Sec. 5 and the invalidity of Sec. 5a because of insufficiency of the caption of the Act. Their own construction of the Act as applied to them by voluntary payment of the tax accords with our view of its correct construction.

The trial court's judgment is affirmed.

Affirmed.