**SOUTHWESTERN GAS & ELECTRIC CO.
v. STATE.**

No. 9515.

Court of Civil Appeals of Texas. Austin.
Oct. 17, 1945.

Rehearing Denied Oct. 31, 1945.

Everett L. Looney, Edward Clark, Donald S. Thomas, R. Dean Moorhead, O. S. Carpenter, and Frederik Isely, all of Austin, for appellant.

Grover Sellers, Atty. Gen., and W. V. Geppert and J. Arthur Sandlin, Asst. Attys. Gen., for appellee.

McCLENDON, Chief Justice.

Chain store tax case involving the construction or application and the validity of the proviso in the 1941 amendment to R.C.S. Art. 7060, Acts 47th Leg. p. 269, Ch. 184, Art. V. § 1, styled Omnibus Tax Law, Vernon's Ann.Civ.St. Art. 7060, which proviso reads: "And provided further that utilities paying an occupation tax under this Article shall not hereafter be required to pay the license fee imposed in Article 5a, House Bill No. 18, Chapter 400, Acts of Forty-fourth Legislature, for the privilege of selling gas and electric appliances and parts for the repairs thereof, in towns of three thousand (3,000) or less in population according to the next preceding Federal Census."

The suit was brought by the State against SW (Southwestern Gas & Electric Company) for an unpaid balance of chain store taxes for the years 1941, 1942 and 1943. The SW is a member of the chain involved in the Central case (Central Power & Light Co. et al. v. State, Tex.Civ.App., 165 S.W. 2d 920, error refused and appeal dismissed "for the want of a substantial federal question" by the U. S. Supreme Court, 319 U.S. 727, 63 S.Ct. 1033, 87 L.Ed. 1691); and the

tax involved is the SW's allocated portion of the entire tax assertedly due by the three members of the chain predicated upon the entire number of stores operated by them in the respective years, less the taxes paid by them for those years; which latter were based only upon their total number of stores located in towns of more than 3,000 population according to the 1940 Federal Census. The case was tried to the court upon agreed stipulation, under which the only ultimate issue presented is whether the above-quoted proviso of the 1941 amendment was effective (as against its asserted construction or application and its asserted invalidity) to relieve or exempt the members of the chain from including therein their stores located in towns of 3,000 population or less according to such census. The trial court rendered judgment for the State (upon what specific ground of ineffectiveness of the proviso in this regard is not shown), and the SW has appealed.

In the main the State urges three contentions in support of the trial court's judgment:

1. Our holding in the Central case was to the effect that the tax levied in Sec. 5 of the Chain Store Tax Law, Chap. 400, p. 1589, 1st CS 44th Leg., 1935, Vernon's Ann. P.C. Art. 1111d, § 5, included the same subject matter as that levied in Sec. 5a; therefore Sec. 5a was supererogatory, ineffective and a nullity as levying a tax. The quoted proviso in the 1941 amendment by its express terms related only to the purported tax levied in Sec. (Art.) 5a, which Section in fact levied no tax, and had no effect upon the tax levied by Sec. 5, but left that tax in effect to the full extent as it existed . before the 1941 amendment of Art. 7060.

The quoted proviso in the 1941 amendment to Art. 7060 was violative of:

2. Art. III, Sec. 36, Texas Constitution, Vernon's Ann.St., as being an "amendment by reference." And

3. Art. VIII, Sec. 2, Texas Constitution, as being discriminatory.

We will consider these contentions in the order named.

The Chain Store Tax Law as finally passed contained two tax levying sections (5 and 5a), each of which (purportedly) levied an identical tax upon the subjects designated respectively in the two sections. Sec. 5 was general and all-inclusive (save only as to six designated exceptions), embracing every character of business coming within the general meaning of "store" as defined in the Act. Sec. 5a was specific, embracing only businesses conducted by gas and electric utilities in the sale of "equipment or appliances operated and/or used" in connection with gas or electricity. The fourth designated exception in Sec. 5 was of "any business now paying an occupation tax measured by gross receipts." Sec. 5a, after providing in substance that invalidity thereof in whole or in part should not operate to invalidate Sec. 5, concluded with this paragraph: "This Section shall be construed as a limitation upon the exception in Section 5 hereof of businesses now paying an occupation tax measured by gross receipts."

It is quite manifest that there was no intention to impose both a tax levied by Sec. 5 and one levied by Sec. 5a upon a single business. Nor has that construction of the Act ever been urged. That would have been a flagrant example of double taxation, at least from every practical viewpoint. It follows, of course, that the businesses as to which Sec. 5a applied (assuming its validity and assuming—which we do not—that two separate taxes were levied) were not included in Sec. 5 and vice versa. In other words, giving effect to the entire Act, and indulging the above presumptions, two separate taxes of identical amounts were intended to be levied upon two separate classes of businesses, each of which was excluded from the tax levied against the other. This also would follow from the general rule that a specific provision will control over a general one, regardless of the otherwise proper construction of the latter. Which means, as applied to the situation at bar, that Sec. 5a levies a tax upon the specified class of businesses named therein, thereby excluding such class from the class or classes designated in Sec. 5, regardless of whether, in the absence of Sec. 5a, the class designated therein would be included in the classes designated in Sec. 5. This is made clear, if need be, by the last paragraph of Sec. 5a, above quoted. We are not here concerned with what construction the Legislature may have placed upon the fourth exception in Sec. 5, although it is quite plain from the last paragraph of Sec. 5a that that section was to operate as a limitation upon exception 4 of Sec. 5.

The Attorney General's department, in several opinions, held that two separate

taxes are levied upon two separate classes of businesses, one under Sec. 5, the other under Sec. 5a. This result, however, appears to have been predicated upon the conclusion that the utilities designated in Sec. 5a were included in exception 4 of Sec. 5, and were therefore not subject to Sec. 5 tax, but were taxed under Sec. 5a.

The three utility corporations involved in the Central case had, apparently without question, paid the tax from its inception (1936) to and including 1940; based, however, upon the theory that each corporation operated a separate chain. About the latter year the Comptroller demanded an additional tax for the years 1936-1940, upon the theory that the three corporations constituted a single chain, and upon refusal of such demand the Central suit was brought. It is not necessary to advert to the several contentions of the defendants in the Central case, under which they contested the State's contention that they constituted a single chain; practically all of which had been adjudicated adversely to them in Safeway Stores, Inc., of Texas v. Sheppard, Tex.Civ.App., 158 S.W.2d 319, and Humble Oil & Refining Co. v. State, Tex.Civ.App., 158 S.W.2d 336 (error refused in each). Additionally, the defendants urged for the first time that they were not liable for any tax whatever under the Act, upon the theory that they were exempt under the fourth exception of Sec. 5, and that Sec. 5a was invalid for want of sufficient caption. We had before us, therefore, for adjudication the two questions thus raised, both of which we decided adversely to the contentions of the defendants; our holding in substance being: (1) defendants did not fall within the wording of the 4th exemption because the occupation tax they paid (Art. 7060) was not "measured by gross receipts" but by receipts from a part only of their businesses; therefore, if Sec. 5a were eliminated they would be subject to the tax under Sec. 5; and (2) Sec. 5a was not invalid, consequently they were subject to the tax under it. That decision became final May 3, 1943, when the Federal Supreme Court dismissed the appeal. Prior to that time the Attorney General's department had ruled that the quoted proviso to the 1941 amendment was effective and the utilities named were exempted from the tax as to their stores in the towns of 3,000 population and less; and the printed forms for rendition of Chain Store taxes sent out by the Comptroller for the years 1941-1943 contained the following:

"Effective May 1, 1941.

"Utilities: Exempt from Store Tax where selling gas and electric appliances and parts for the repair thereof in towns of 3,000 or less in population according to the next preceding Federal Census."

The agreed stipulation states in effect that appellant would not have opened or operated appliance stores in such towns had it not been for the quoted proviso in amended Art. 7060 and its stated construction.

June 1, 1943, the Attorney General's department rendered to the Comptroller an opinion (referred to as the Roberts opinion) in which it was held that utilities were taxable under Sec. 5, and not under Sec. 5a, and the quoted proviso in the 1941 amendment was not effective to relieve the utilities named in Sec. 5a from any portion of the tax imposed by Sec. 5. This opinion was based upon the construction it placed upon our opinion in the Central case and from the statement in Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896, that the only business falling within exception 4 of Sec. 5 was that of text-book publishers. The following quotations from the Roberts opinion embody its gist:

"A careful reading of the opinions in the cases of Central Power & Light Co. v. State, and Hurt v. Cooper, supra, leads to the inescapable conclusion that none of the stores of utility companies have ever been subject to tax under Sec. 5a, Art. 1111d, V. P. C., but that all of such stores have been subject to the tax imposed by Sec. 5 of such article at all times since the enactment of the law. The Legislature, in passing the amendment to Art. 7060, did not undertake to exempt the stores of such companies from the operation of Sec. 5 of the Chain Store Tax Law, but only attempted to exempt certain stores from the operation of Sec. 5a. Clearly such amendment had no effect upon the operation of Sec. 5; and our opinion No. 0-3637, insofar as it declares that no further tax can be collected on such stores by virtue of the provisions of Sec. 5, to that extent is erroneous, and such holding is hereby overruled.

"We are convinced that all stores of utility companies, wherever located in this State, have been taxable under the provisions of Sec. 5, Art. 1111d, V. P. C., at all

times since the effective date of that statute, and that the quoted amendment to Article 7060 was wholly ineffective to remove such liability, since that amendment was directed to the provisions of Sec. 5a only, and the obvious intent of the Legislature was simply to eliminate whatever liability, if any, which existed against the stores named therein by virtue of the provisions of such section."

We find nothing in the Central opinion to warrant the construction placed thereon in the Roberts opinion. As already shown the utilities contended in the Central case that they were not liable for the tax because (1) they were exempt under exception 4 of Sec. 5, and (2) Sec. 5a was invalid for want of sufficient caption. Each of these points was considered separately and each overruled. Introductory to consideration of the first point the opinion reads [165 S.W.2d 924]: "If it be conceded ,(which it is not) that Sec. 5a is invalid on account of the insufficiency of the caption to include it, then that section is entirely eliminated and application of the Act to appellants should be considered as though Sec. 5a were not embodied therein."

It was from the viewpoint of this conclusion (made only arguendo) that the first point was considered and overruled. The second point was also overruled, thereby adjudicating the validity of Sec. 5a. In the course of the Roberts opinion the following excerpt is quoted from the Central opinion: "While the Section 5a was in effect merely cumulative of Section 5, in that its provisions were already included therein, its purpose may readily be explained as a clarification of the fourth exception of Section 5."

When this language is given a reasonable construction in the light of its context (what the court had before it for decision) it does not import a holding that the two sections levied separate taxes upon the same business, that Sec. 5 levied the tax on the utilities, and that Sec. 5a was, therefore, supererogatory, ineffectual and a nullity. What the quotation plainly imports is that the two sections should not be read independently, each levying a separate tax, but should be read together (cumulatively), Sec. 5a being "a clarification of the fourth exception in Sec. 5." 165 S.W.2d 925. This, we think, clearly follows, also, from the last paragraph of Sec. 5a, that the section "shall be construed as a limitation" on exception 4 of Sec. 5. The only alternative construction fairly to be given the quoted excerpt (barring, of course, that of two separate taxes on the utilities, which is clearly excluded by the last paragraph of Sec. 5a, and for which no one has ever contended or could reasonably contend) is that Sec. 5a, being valid, levies the tax on the utilities; and being specific, excludes the utilities from the tax levied generally in Sec. 5. The Act is singular in purpose, levying a single "Chain Store Tax" upon each person (legal entity) falling within its purview; and every valid section or provision of the Act must be given effect where possible. The Legislature must have concluded either that the utilities were exempted by exception 4 of Sec. 5, or that the application of the exemption to them was at least doubtful; the purpose of Sec. 5a being to bring the utilities within the purview of the tax. Sec. 5a was clearly what its express language imported—a limitation upon the exemption 4 of Sec. 5,—and in effect a clarification of that section.

For all practical purposes it is of no consequence which of these alternative courses of reasoning is adopted. That is, whether (1) the tax is levied by Secs. 5 and 5a cumulatively (Sec. 5a limiting exception 4 of Sec. 5), or (2) the tax is levied by Sec. 5a, which, being specific as to utilities, excludes them from the general classes designated in Sec. 5. The *form* in which the Legislature chose to mould the Act is that of two separate (mutually exclusive) tax levies and from that consideration alone would call for the latter course of reasoning. Yet each course arrives at the same result; each recognizes the validity and effectiveness of Sec. 5a; and neither in any way conflicts with the decision in the Central case.

It is plain that the Legislature intended by the 1941 amendment to Art. 7060 to eliminate for Chain Store Tax purposes the stores of utilities in the designated towns, and not "simply to eliminate whatever liability, if any, which existed by virtue of the provisions of" Sec 5a. Elaboration upon the proper ascription of legislative intent would itself be supererogatory. The legislative intent is plain, and no refinement of reasoning may properly be employed to deflect it from its manifest course, thereby depriving the utilities of an exemption which it was the clear and unequivocal purpose of the Legislature to give them. An *intention* to do a useless

ineffective thing should never be ascribed to the Legislature in the performance of its law enacting function. We find no reasonable basis for not enforcing the clear intent of the Legislature in this regard, and overrule the State's first contention above.

■■ While not urging it as an independent point, the State's brief adverts to the fact that the 1941 amendment to Art. 7060 refers to "Article 5a" instead of "Section 5a" of the Chain Store Tax Act. When used in connection with a document or other writing the two words have generally the synonymous meaning of division. The divisions of the Act are designated therein as "sections", "article" being nowhere used therein to denote a division. Use of the expression "Article 5a" in the 1941 amendment is a palpable inadvertence. The Legislature manifestly intended "Section 5a".

The State's contentions 2 and 3 above (invalidity of the proviso in the 1941 amendment of Art. 7060 as being: (2) an amendment to Sec. 5a of the Chain Store Tax Act by reference, and (3) discriminatory) are urged for the first time in this suit; the Roberts opinion being based solely upon its construction of the Central opinion; and, as stated, prior opinions of the Attorney General's department holding the 1941 amendment effective as an exemption of the stated stores.

Considering the State's second contention above: Sec. 36 of Art. III, Texas Constitution, reads: "No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."

■ The provision has been construed in a number of decisions in this State, as well as in other states having similar constitutional provisions. It is the general rule in this as well as in other states that the provision does not apply to legislative acts which are complete within themselves, although their effect may be to amend some other law. And this rule seems to apply regardless of whether the amendatory act specifically mentions the act thereby in effect amended. The State concedes the correctness of this rule as to cases in which there is no mention of the amended act; but contends that where, as here, the act amended is mentioned in the amendatory act, there is an amendment by reference

and the provision applies. We do not so construe the adjudicated cases in this state. To the contrary we regard the cases of Snyder v. Compton, 87 Tex. 374, 28 S.W. 106, and Quinlan v. Houston & T. C. R. Co., 89 Tex. 356, 34 S.W. 738, as practically on all fours with the case at bar, since in each the act in effect amended by the subsequent act was expressly referred to in the latter. The following quotations from the opinions in these cases (each by Chief Justice Gaines) when read in the light of the factual situation involved, control, we believe, the decision in the instant case.

From the Snyder case [87 Tex. 374, 28 S.W. 1062]: "It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended. Under such a rule, legislation would in many instances be impracticable. This is especially the case in this state, where the existence of the common law is due to statutory enactment. The practice, which it was the purpose of the provision in question to prohibit, was that of amending a statute by reference to its title, and by providing that it should be amended by adding to or striking out certain words, or by omitting certain language, and inserting in lieu thereof certain other words. It was not intended to prohibit the passage of a law which declared fully its provisions, without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes. Similar provisions in other constitutions have been construed not to apply to implied amendments."

From the Quinlan case [89 Tex. 356, 34 S.W. 740]: "There are many statutes that do not purport to be amendments that have the effect to enlarge or to restrict the operation of others. In the absence of some constitutional restrictions of like effect to that of section 25 of article 7 of the constitution of 1845, it was the usual practice of legislative bodies to amend a law simply by providing that certain words should be added, or that others should be stricken out, or that, in place of certain language, certain other language should be substituted. Such an amendment frequently presented a problem in construction that it was difficult for the average mind to solve. This practice afforded a means of imposing upon unwary members of the legislative bodies, and of procuring the passage of amendments which would never have passed had their effect been

138

fully understood. So, also, the amendment, when passed, did not admit of that ready understanding which is desirable in all written laws. These were the evils which it was the purpose of section 25 to suppress. That provision, and other similar constitutional restrictions upon the form of legislation, have never, in construction, been given a rigid effect. They have been held applicable to such statutes only as come within their terms, when construed according to the spirit of such restrictions, and in the light of the evils to be suppressed. Any other rule, as applied to the particular inhibition under consideration, would work great, if not intolerable, inconvenience, and would render the statutes unnecessarily voluminous. * * * ”

In Henderson v. Galveston, 102 Tex. 163, 114 S.W. 108 (strongly relied upon by the State), there was an express amendment to a prior enactment adding a provision thereto.

■ The proviso in the 1941 amendment of Art. 7060 was complete within itself, stated not only exactly, but simply in clear unequivocal language what it enacted; and involved none of the evils which Sec. 36 of Art. III was designed to avoid. It exempted the utilities paying the tax levied in the amended Art. 7060 (an increase over the prior article) from the chain store tax as to their stores in the stated towns. In effect it removed those stores from the operation of the Chain Store tax law. The case clearly falls within the rule that the mere inclusion or exclusion of a designated thing, individual, or class from the purview of a prior enactment does not constitute an amendment by reference within the meaning of Sec. 36 of Art. III. Other pertinent cases are Dallas County Levee Dist. v. Looney, 109 Tex. 326, 207 S.W. 310; Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680; and James v. Gulf Ins. Co., Tex.Civ.App., 179 S.W.2d 397 (expressly affirmed on this point in Tex.Sup., 185 S.W. 2d 966).

The State's brief quotes the following from the opinion of this court in the James case [179 S.W.2d 404]: "We think Senate Bill 144 is an independent enactment or law, complete within itself, and states fully its purpose or provision without reference to any other statutes or laws. It therefore does not violate Sec. 36 of Art. III of the Constitution."

S.B. 144, Vernon's Ann.Civ.St. Arts. 6687b, § 15, and 4385a, did, however, designate specific funds which it transferred to the general revenue fund, although it did not designate the laws which created those funds. If in addition it had designated those laws, could it be reasonably urged that that fact brought the Bill within the purview of the constitutional inhibition, when otherwise it would not be so brought? Certainly there can be no substantial difference between an express designation of a prior law and a designation thereof by necessary implication. S.B. 144 clearly did not fall within the purview of the invoked provision, either in letter or in spirit. Equally clearly, we think, it would not have done so had there been added a specific designation of the laws creating the several funds. Likewise do we think that the here involved proviso, equally clearly, does not fall within the invoked constitutional inhibition either in letter or in spirit. It would serve no useful purpose, we think, to further extend this discussion by an analysis of the other cases cited on this point in the respective briefs.

■ The State's third contention above is to the effect that the quoted proviso in the 1941 amendment to Art. 7060 created a classification which had no reasonable basis and therefore constituted an unwarranted discrimination in violation of Sec. 2 of Art. VIII, Texas Constitution, which requires that "all occupation taxes shall be equal and uniform upon the same class of subjects." The following excerpt from Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481, 485 (Justice Williams writing), a leading case upon the subject of legislative classification, sets forth clearly and succinctly the principles applicable to the instant question: "The very language of the Constitution of the state implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation, as, for instance, merchants, may thus be divided into classes, and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage.

The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule in applying both the state and federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it."

The same questions frequently arise under the due process clauses of the State and Federal Constitutions. Vernon's Ann.St.Const. art. 1, § 19; U.S.C.A.Const. Amend. 14. See Watts v. Mann, Tex.Civ. App., 187 S.W.2d 917, 924, error refused, where the subject was considered somewhat at length; and wherein it was pointed out that: "In determining whether there is a reasonable basis for the classification there is a general presumption that the Legislature has done its duty, not violated the Constitution; and therefore the classification will be upheld unless it appears, clearly and without doubt, that it has no reasonable basis of support."

The classification in the quoted proviso is "utilities paying an occupation tax under this Article," the exemption, however, extending only to those embraced in Sec. 5a of the chain store tax law; that is utilities supplying gas or electricity. The tax imposed is a graduated one, based on population of the towns and cities operated in, and limited to those of 1,000 population or more. Those not operating in towns of as much as 1,000 population are not exempted. The two substantial questions thus posed are therefore: Whether there is a reasonable basis for excluding from the classification (1) those other than utilities selling only gas and electric appliances in the stated towns; or (2) those utilities, if any, that do not operate in towns or cities of more than 1,000 inhabitants, and therefore do not pay the tax imposed by the 1941 amendment to Art. 7060.

Tested by the above general principles, and their proper application as established by adjudicated cases, the power of the Legislature to classify as a separate business for purposes of taxation, the operation of gas or electric utilities, can not seriously be questioned. We think also that anything properly incident to the operation of such business, may also be reasonably included in the classification, even though others not operating such business may do those incidental things. As pointed out in the Central case the sale of gas or electric appliances is properly incident (germane) to a gas or electric utility business, and therefore is not ultra vires, where the utility is incorporated; citing San Antonio P. S. Co. v. State, Tex.Civ.App., 62 S.W.2d 585 (affirmed and opinion adopted in Tex.Com.App., 69 S.W.2d 38), where the precise question was adjudicated as to electric utilities. A similar question was presented in the Humble case (Humble Oil & Refining Co. v. State, Tex.Civ.App., 158 S.W.2d 336, error refused), involving the construction of exception 2 of Sec. 5 of the Chain Store Tax Act, and in the Mutual case (Mutual Lumber Co. v. Sheppard, Tex.Civ.App., 173 S.W.2d 494), involving exception 1 of said Sec. 5. The specific question in the Humble case was whether sales of accessories was an incident to servicing automobiles in connection with the filling station business. It was held that it was, but the exemption was not extended to stations selling accessories, upon the express holding that (following prior holdings held to control) "the legislature had itself defined what it meant to imply by the quoted term." [158 S.W.2d 340.] But for such legislative definition it is clear that the exception would have been held to apply and would have been upheld, although others, not engaged in the filling station business sold such accessories and were required to pay the tax. The validity of the 1941 amendment to Sec. 5, H.B. 8, Chap. 184, Art. XIX, p. 336, Acts 1941, which in effect included the sale of accessories within the meaning of servicing has never been questioned. In the Mutual case the exemption of those engaged exclusively in the sale of lumber and building materials was upheld, although some of the articles held to fall within the classification of building materials, including certain electric appliances, were also sold by others required to pay the tax. It was there pointed out that [173 S.W.2d 500]: "Manifestly, the whole purpose of the Legislature in enacting Section 5a was to impose a tax on utilities selling such merchandise in connection with their *primary business* of selling electric current or gas." (Emphasis added.) To hold that the taxing or ex-

empting from a tax of a particular business including its appropriate incidental activities would be invalid as discriminatory because some of the included incidental activities were pursued by others not engaged in the primary business taxed or exempted, would strike down the above 1941 amendment to Sec. 5, and the 1943 amendment to Sec. 5, H. B. 10, Acts 1943, Vernon's Ann.P.C. art. 1111d, which the Roberts opinion concedes to be valid, as well as generally so involve and confuse the question as to render the important legislative function of classification as applied to taxation of slight, if any, import.

As to the second posed question. The 1941 amendment to Art. 7060 purports to impose the tax upon all utilities of the classes named therein. The tax is a graduated one according to population of towns and cities in which the utilities operate, and only towns and cities of 1,000 population and over are included in the enumerated grades taxed; the effect being to exclude from the tax utilities not operating in towns or cities of 1,000 population or more. No serious question could be raised as to the validity of the tax imposed by the amendment by virtue of this exclusion. See Dallas Gas Co. v. State, Tex. Civ.App., 261 S.W. 1063, error refused. The proviso to the amendment, exempting appliance stores in towns of 3,000 population or less, only applies to utilities paying the tax imposed by the amendment, thus in effect excluding from the exemption stores operated by utilities that do not operate in towns of 1,000 population or over, if such there be. We think there is a reasonable basis for this classification in the fact (if for no other) that the occupation tax imposed on utilities is a graduated one, in which those operating solely outside the lowest bracket are relieved entirely from the tax burden. This total exemption in itself places them in a separate class, which we think affords ample ground for not including them in the exemption in the proviso. The classification, we think, is not arbitrary or capricious.

There is another ground upon which we think the validity of the classification should be sustained. In the Stephens case, above, it was held (quoting from the syllabus): "A statute which imposes an occupation tax only on pipe line companies transporting oil, and not on other pipe line companies, can not be said

to make an unconstitutional discrimination, in the absence of evidence that all pipe line companies in this State are not so engaged." There is no showing that there is a single utility operating an appliance store in this State, that does not pay the occupation tax levied by amended Art. 7060, that is that does not operate in a town or city of 1,000 or more population. If such were the case the records of the Comptroller's department should show it. Paraphrasing a quotation from the Stephens case: it is not made to appear, and we do not know judicially that there are in the state any of the other companies or persons who would not be exempted under the proviso.

The Supreme Court case apparently most strongly relied upon by the State on the issue of unwarranted classification is Pullman P. C. Co. v. State, 64 Tex. 274, 53 Am. Rep. 758. The exemption there was predicated solely upon ownership of the property upon which the taxed business was conducted. We refer to the analysis of that case in the Chain Store Tax Cases (Hurt v. Cooper), 130 Tex. 433, 443, 110 S.W.2d 896, apparently the only opinion in the Texas Supreme Court Reports in which it has ever been cited; although many cases involving the issue of discriminatory classification have been before that court in the half century since the Pullman case was decided. See also Ex parte Walker, 121 Tex.Cr.R. 145, 52 S.W.2d 266, followed in Card v. Souter, 122 Tex. 77, 52 S.W.2d 268, an adopted Commission opinion.

There is no merit in the State's further contention that some of the enumerated articles sold in stores in question were other than electric appliances, such as water pumps, ranges and domestic refrigerators. This contention appears to be predicated upon the fact that the proviso to Art. 7060 is limited to "appliances" whereas Sec. 5a refers to "equipment or appliances." Considered contextually the two words are used synonymously. All the enumerated articles properly classified as "equipment * * * operated * * * in connection with any electrical current," are also properly classified as "appliances" so operated.

The trial court's judgment is reversed and judgment is rendered for appellant.

Reversed and rendered.

BAUGH, J., did not participate in this decision.