**LOCKHART et al. v. AMERICAN MUT. LIFE INS. CO.**

No. 9559.

Court of Civil Appeals of Texas. Austin.
April 24, 1946.

Rehearing Denied May 1, 1946.

Grover Sellers, Atty. Gen., and W. V. Geppert and C. K. Richards, Asst. Attys. Gen., for appellants.

Black, Graves & Stayton and Ireland Graves, all of Austin, for appellee.

McCLENDON, Chief Justice.

Suit brought under Art. 7057b, Vernon's Ann.Civ.St., by Mutual (American Mutual Life Insurance Company, an Iowa corporation), successor of Yeomen (The Brotherhood of American Yeomen, a fraternal benefit society, organized under the laws of Iowa) against the Board (State Board of Insurance Commissioners) and other officials, to recover gross premium taxes for 1932 and subsequent years upon assessments paid by Texas holders of beneficiary certificates issued by Yeomen prior to 1932. The taxes having been demanded by the Board (as having accrued under Art. 4769, Vernon's Ann.Civ.St.) were paid into the suspense account of the State Treasury under protest. The judgment, in a trial to the court upon an agreed statement of facts, was in favor of the Mutual, and the defendant officials have appealed.

The facts of this case are on all fours with those in the American case (Lockhart v. American United Life Insurance Company, Tex.Civ.App., 181 S.W.2d 607, error refused), and call for a like decision unless, as contended for by appellants, fraternal benefit societies, upon the constitutional grounds stated below and not raised or decided in the American case, are liable for and not exempt from the gross receipts taxes imposed upon life insurance companies by Art. 4769 and amendments thereof. It will not be necessary to detail the facts since the questions now at bar affect all fraternal benefit associations, foreign and domestic, whether or not they have converted to level premium insurance companies. We refer in this connection to Yeomen Mutual Life Ins. Co. v. Murphy, 223 Iowa 1315, 275 N.W. 127, cited with approval in the American case.

The statutory provisions here involved are the following:

Art. 4769 which imposes a gross receipts tax upon life insurance companies, conceded to be an occupation tax. This article is a part of Chapter 4, Title 78, Vernon's Ann.Civ.St., and is quoted in full in the American case.

Art. 4779 (also a part of the same Chapter) which reads:

"Nothing in this chapter shall be held to apply to fraternal benefit societies as defined by the laws of this State."

Art. 4823, Vernon's Ann.Civ.St., a part of Chapter 8 of Title 78 relating to "Fraternal Benefit Societies," which reads:

"Except as herein provided, such societies shall be governed by this law, and shall be exempt from all provisions of the insurance laws of this State, not only in governmental relations with the State, but for every other purpose. No law hereafter enacted shall apply to them, unless they be expressly designated therein."

Art. 4858, Vernon's Ann.Civ.St., also a part of Chapter 8, Title 78, which reads:

"Every fraternal benefit society organized or licensed under this chapter is *hereby declared to be a charitable and benevolent institution,* and all of its funds and property shall be *exempt* from all and every State, county, district, municipal and school tax, other than taxes on real estate and office equipment, when same is used for other than lodge purposes." (Emphasis added in all quotations.)

The 1936 amendment to Art. 4858, Art. IV, Sec. 5d, Chap. 495, 3rd C.S., 44th Leg. at page 2077—Omnibus Tax Law—which imposed a gross assessments tax on foreign fraternal benefit societies, the first portion of which reads:

"Except as to premium on gross receipt taxes levied by this Article or other provisions of laws of this State, fraternal benefit societies organized or licensed under this Chapter are hereby declared to be *exempt* from all and every State, county, municipal and school district taxes other than taxes on real estate and office equipment when same is used for other than lodge purposes, *inasmuch as* such societies are charitable and benevolent institutions."

Then follows the provision levying the tax. This amendment became effective October 31, 1936.

Art. 4858a, Vernon's Ann.Civ.St., passed March 1, 1937, and effective the same day, Chapter 14, p. 16, Gen.Laws 45th Leg., which reads:

"Every fraternal benefit society organized or licensed under the provisions of Chapter 8 of Title 78 of the Revised Civil Statutes of Texas, *is hereby declared to be a charitable and benevolent institution*, and all of the funds of such fraternal benefit society shall be exempt from all and every state, county, district, municipal and school tax, including occupation taxes, other than taxes on real estate and office equipment when used for other than lodge purposes."

■ It was held in the American case that this Article repealed by necessary implication the tax imposed by Art. IV, Sec. 5d of the 1936 amendment to Art. 4858, and that no tax ever accrued thereunder since its effective date coincided with the date reports had to be made under the 1936 amendment.

Appellants thus state the question which they assert the appeal presents:

"Are the provisions of Article 4779 and Article 4858a, V.A.C.S., which purport to exempt fraternal benefit societies from all taxation, violative of the provisions of Sections 1, 2 and 4 of Article 8 of the Constitution of Texas and of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States."

These Sections of Art. 8 of our Constitution, Vernon's Ann.St., in so far as here pertinent, read:

"Section 1. Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value * * *."

"Sec. 2. All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the Legislature may, by general laws, exempt from taxation * * * institutions of purely public charity."

"Sec. 4. The power to tax corporations and corporate property shall not be surrendered or suspended by act of the Legislature, by any contract or grant to which the State shall be a party."

■ It is conceded (nor could it be reasonably contended otherwise) that under its powers of classification, the legislature may exclude fraternal benefit associations from the provisions of an occupation tax imposed upon life insurance companies generally. But the contention seems to be that the legislature has not exercised its powers of classification in the statutes involved, but has attempted to exercise the power granted under Const. Art. 8, Sec. 2, to create a tax exemption in favor of fraternal benefit associations, on the ground that they are "institutions of purely public charity"; that the statutes are void in toto as applied to taxation in that fraternal benefit societies are not "institutions of purely public charity" within the meaning of the Constitution (citing City of Houston v. Scottish Rite Benevolent Association, 111 Tex. 191, 230 S.W. 978; Concho Camp, No. 66, W. O. W. v. San Angelo, Tex.Civ.App., 231 S.W. 1106; Benevolent & Protective Order of Elks, Lodge No. 151 v. Houston, Tex.Civ.App., 44 S.W.2d 488, and other cases); and that appellees are therefore liable for the taxes in issue under the provisions of Art. 4769 and amendments thereof.

For reasons we shall state, we are not called upon to pass upon whether fraternal

benefit societies may properly be classified as "institutions of purely public charity" within the meaning of the Constitution, or whether Arts. 4858 and 4858a are void in so far as they attempt to exempt these societies from ad valorem property taxes. Upon this question we express no opinion. For our present purposes it may be assumed (arguendo) that the attempted exemption is void.

■ Implicitly, if not expressly, appellants contend that Art. 4779 (and by the same token we assume Art. 4823, also) in so far as it is applicable to Art. 4769 is a tax exemption and not a classification statute. With this contention we do not agree; and this appears to be the crux of the entire case. Nothing, we think, could be plainer than that the decision in the American case is based upon the proposition that Art. 4769 does not impose a tax upon the insurance business done by fraternal benefit societies. To quote from the opinion [181 S.W.2d 610]:

"It is of course true that fraternal benefit societies are in essence life insurance companies and the business they conduct is life insurance. In fact this is probably the oldest form of life insurance. See State v. Texas Mut. L. Ins. Co., Tex. Civ.App., 51 S.W.2d 405. In like manner the 'beneficial certificates' they issue are 'policies of insurance,' and the 'assessments' in connection therewith are 'premiums,' within the broad general meaning of those terms. See Daniel v. Life Ins. Co. of Virginia, Tex.Civ.App., 102 S.W.2d 256. It has been the uniform policy of this state, and of many if not all the others, to place fraternal benefit societies and the character of life insurance business they do *in a class separate from that of other kinds of life insurance companies and business.* They are dealt with in a separate chapter (8) of Title 78 wherein they are defined with particularity and subjected to stated regulations. * * *

."In so far as concerns the business represented by these certificates, we hold the American falls *within the classification* of fraternal benefit societies within the intent and meaning of Art. 4779. The life insurance business on the one hand and that of fraternal benefit insurance on the

other, are separate and distinct businesses under our statutory treatment. The tax imposed by Art. 4769 is for conducting the former in Texas. No tax is imposed for conducting the latter. The American is conducting both classes, and therefore falls within the classification of both classes of organization (company). As to its old line or level premium business it is an insurance company and its 'premiums' and 'policies' are such within the meaning of Art. 4769. As to the business of handling the certificates involved it is a fraternal benefit society within the meaning of Art. 4779, and the certificates and assessments thereon are not policies of insurance or premiums within the meaning of Art. 4769.

"The same result is reached by giving the expressions 'premiums' and 'policies of insurance' their evident meaning as deduced from their context, the relation of Art. 4769 to other articles, and the uniform policy of the state. It is manifest that the expression 'life insurance company' was not intended to apply to fraternal benefit societies. Art. 4779 expressly so provides. The exclusion of the latter from the 'life insurance companies' designated in Art. 4769, by necessary implication excludes the character of business they, and they alone do or are authorized to do, that is the issuing of beneficial 'certificate' and collecting 'assessments' thereon. Since Chapter 4 of Title 78 deals only with *a class of life insurance companies* restricted so as to expressly exclude fraternal benefit societies, the words employed in Art. 4769 must be given a meaning which accords with this restriction. So construed 'premiums' excludes 'assessments' and 'policies' excludes 'certificates.'

"This construction accords with the uniform policy of the state; and places these certificate holders upon the same basis as certificate holders in other fraternal benefit societies. And since the tax of necessity ultimately falls upon the certificate holders, it obviates a discrimination between these and those holding certificates in other fraternal benefit societies,—a discrimination manifestly opposed to any legislative intent."

But, it may be urged that the implied repeal of the 1936 amendment to Art. 4858,

which imposed the tax upon foreign fraternal benefit societies, depends upon the validity of Art. 4858a, which expressly *exempts* every fraternal benefit society from occupation, as well as other stated taxes, upon the express declaration that it is a "charitable and benevolent institution." Therefore foreign benefit societies must be held liable under the 1936 amendment to Art. 4858 (which imposes the same tax as Art. 4769 as amended by the same act, Art. IV, Sec. 5c, Omnibus Tax Act), since Art. 4858a is void in toto on the grounds urged.

The decision in the American case that Art. 4858a repealed by necessary implication the 1936 amendment to Art. 4858, should be upheld under the doctrine of stare decisis, if it can be so upheld upon any tenable ground. We think it can be upheld upon the ground that in so far as Art. 4858a relates to occupation taxes it in effect constitutes a proper exercise by the legislature of its powers of classification. The article does not purport to classify these societies as "purely" charitable or as "public" charities, but only as "benevolent and charitable [institutions]." This they unquestionably are, although not entirely or "purely" so. But this we think is unimportant. If the legislature did what it had the power to do, the validity of its act cannot be assailed upon the ground that it ascribed an inappropriate predicate, or no predicate at all, for its action. The act may properly be held severable as to occupation taxes, and should be so held, if necessary, to support the decision in the American case.

The fact that the act uses the word "exempt" has no controlling significance. Classification when employed to relieve a specific group from the operation of an occupation tax is in essence an exemption of the group. Etymologically "exempt" (the verb) means to buy or take out. It is defined as "to free or excuse from some burdensome obligation; grant immunity to." Webster. "The term is not a technical one but a plain English word, meaning" (inter alia) "to take out of or from, and in its ordinary signification to free from, or not be subject to any service or burden to which others are made liable." 34 C.J.S., Exempt, p. 1378. This is precisely what

classification does when employed in the field of taxation of occupations. It excludes; or (its synonym) exempts. To quote from Director General of Railroads v. Vicose Company, 254 U.S. 498, 41 S.Ct. 151, 153, 65 L.Ed. 372:

"That 'exclusion is not classification' is an arresting but illusory expression. Classification in carrier rate-making practice is grouping—the associating in a designated list, commodities, which, because of their inherent quality or value, or of the risks involved in shipment, or because of the manner or volume in which they are shipped or loaded, and the like, may justly and conveniently be given similar rates. To exclude a commodity from all classes is classification of it in as real a sense and with as definite an effect as to include it in any one of the usual classes."

The same is true in occupation taxation.

In legislative classification of occupations exclusion is generally treated as exemption. So also in the adjudicated cases. In the Chain Store Tax Cases (Hurt v. Cooper and McCraw v. S. H. Kress), 130 Tex. 433, 110 S.W.2d 896, exclusions from the tax are so treated and expressly so designated both in the syllabus and in the body of the opinion. The 1941 amendment to Art. 7060, Acts 47th Leg. p. 269, Ch. 184, Art. V, § 1, recently upheld in Southwestern Gas & Elec. Co. v. State, Tex.Civ.App., 190 S.W.2d 132, affirmed Tex.Sup., 193 S.W.2d 675, 679, provided that "utilities paying an occupation tax under this Article *shall not hereafter be required* to pay the license fee" upon a certain designated class of stores. (Emphasis added.) This was nothing more nor less than an exemption; and was so treated by this court and the Supreme Court. To quote from the latter's opinion:

"The quoted proviso clearly shows the legislative intent to *exempt* the classes named therein from the payment of the chain store tax on stores operated in the designated towns."

It is manifest, and in fact conceded, that the legislature had the power to relieve fraternal benefit societies from the payment of any occupation tax. It is equally manifest that such was the clear and

unequivocal intent of the legislature as expressed in Art. 4858a. And as was said in our opinion in Southwestern Gas & Elec. v. State, above [190 S.W.2d 136]:

"The legislative intent is plain, and no refinement of reasoning may properly be employed to deflect it from its manifest course, thereby depriving the utilities of an exemption which it was the clear and unequivocal purpose of the Legislature to give them."

The same thought was thus expressed by the Supreme Court:

"No refined construction of the language employed can be used to distort the clear intent of the lawmaking body in passing the amendment to relieve the respondents from liability in virtue of the Chain Store Tax Law."

The trial court's judgment is affirmed.

Affirmed.