# DIRECTOR GENERAL OF RAILROADS ET AL. *v.* THE VISCOSE COMPANY.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 424. Argued December 8, 1920.—Decided January 3, 1921.

1. Under the Federal Control Act and the Transportation Act of 1920, changes in the classification of a commodity and in the rules determining its acceptance for shipment are as fully within the jurisdiction of the Interstate Commerce Commission when proposed by the Director General of Railroads as if proposed by a carrier subject to the Interstate Commerce Act. P. 501.

2. An amendment or supplement to a freight tariff schedule, filed with the Interstate Commerce Commission, canceling the published classification and rates on artificial and natural silk and amending a rule so as to include such silk among the articles not accepted for shipment, attempts both a classification and a change of regulation within the meaning of the Interstate Commerce Act, the reasonableness of which, when challenged by a shipper, presents a question within the exclusive initial jurisdiction of the Commission. P. 500.

3. *Held,* that a shipper, complaining of such changes, should apply for relief to the Interstate Commerce Commission, and that the District Court was without jurisdiction, in the first instance, to annul the changes and enjoin carriers from complying with them.

THE case is stated in the opinion.

*Mr. Henry Wolf Biklé* and *Mr. Theodore W. Reath,* with whom *Mr. F. Markoe Rivinus* and *Mr. Frederic D. McKenney* were on the brief, for the carriers.

*Mr. Harold S. Shertz* for The Viscose Company.

MR. JUSTICE CLARKE delivered the opinion of the court.

Silk, artificial and natural, had been accepted by the railway carriers of the country for transportation as

freight for many years prior to the action which gave rise to the question which the Circuit Court of Appeals for the Third Circuit has certified herein to this court and it had been classified in tariffs as first class. On January 21, 1920, Walker D. Hines, as Director General of Railroads, authorized an amendment or supplement to the appropriate freight tariff schedule so as to cancel the published classification and rates on such silk and to so amend rule 3 of "Consolidated Freight Classification No. 1" as to include it among the articles "that will not be accepted for shipment."

On the 28th of January, 1920, the supplement thus authorized was filed with the Interstate Commerce Commission, to become effective on the 29th day of February following, and if no other action had been taken the result would have been to have excluded such silks from shipment as freight after the effective date, for after that date there would not have been any published rate applicable to them.

The appellee, The Viscose Company, is an extensive manufacturer of artificial silk, eighty per cent. of which "it maintains" must be shipped as freight, and, claiming that it would suffer great and irreparable damage if the supplement to the tariff proposed by the appellants were allowed to become effective, on February 26th, three days before it would have taken effect, the company applied for and obtained a temporary, and later on a permanent, injunction from the District Court of the United States for the Eastern District of Pennsylvania, restraining the Director General of Railroads and the other appellants:

(1) "From putting into effect and enforcing the provisions of the said 'Supplement No. 2 to Consolidated Freight Classification No. 1,' designed to cancel the existing classification of artificial silk as a commodity of freight," and

(2) "From refusing to accept from The Viscose Company artificial or fibre silk for transportation under classifications which existed prior to the effective date of said Supplement No. 2, or under such other classification as may be put into effect thereafter."

An appeal from the District Court carried the case to the Circuit Court of Appeals, which certifies to this court the question:

"Did the District Court have jurisdiction to decide the matter raised by the complainant's bill and thereupon to annul the said action of the Director General of Railroads and enjoin the carriers from complying therewith?"

Appellants contend that exclusive initial jurisdiction over the controversy here involved is in the Interstate Commerce Commission and that the appellee should have applied to that tribunal for relief. It is argued that the proposed supplement, striking silks from the first class in the tariffs filed, was a change in classification and that the change in rule 3, adding them to the list of commodities which would not be accepted for shipment as freight, was a change of regulation and that over the reasonableness of both of these the Interstate Commerce Commission is given exclusive initial jurisdiction by §§ 1, 3, 6, 13 and 15 of the Interstate Commerce Act (34 Stat. 584, as amended 36 Stat. 539).

On the other hand, it is argued by the appellee that for a common carrier to exclude a commodity from the tariffs and to refuse to accept it for shipment is neither classification nor regulation, and that an attempt to do such a thing presents a question of law for the courts,— that exclusion is not classification nor regulation.

Section 1 of the Interstate Commerce Act makes it the duty of all carriers subject to its provisions to provide and furnish "transportation upon reasonable request therefor" . . . "to establish, observe, and enforce just and reasonable classifications of property for trans-

portation" . . . "and just and reasonable regulations and practices affecting classifications, rates, or tariffs" . . . "and all other matters relating to or connected with the receiving, handling, transporting, storing, and delivery of property." (36 Stat. 539, 545, 546.)

Section 3 of the act makes it unlawful for any carrier to subject "any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." (24 Stat. 379, 380.)

Section 6 requires every carrier to print and file with the Commission schedules in form prescribed, showing "the classification of freight in force, . . . and any rules or regulations which in any wise change, affect, or determine . . . the value of the service rendered to the . . . shipper." (34 Stat. 584, 586.)

Section 13 gives to any person or corporation the right to apply to the Commission for relief on account of "anything done or omitted to be done by any common carrier subject to the provisions of this Act, in contravention of the provisions thereof." (36 Stat. 539, 550.)

And § 15 declares that whenever there is filed "any new individual or joint classification, or any new individual or joint regulation or practice" the Commission shall have power to suspend the operation of such schedule, classification, regulation or practice until, upon complaint or upon its own initiative, an investigation shall be made, and if the proposed classification or regulation is found to be unreasonable or otherwise in violation of the act, the Commission may find what will be just and reasonable in the premises and may require the carrier thereafter to conform to its finding. (36 Stat. 539, 552.)

The power to suspend classifications or regulations when issued by the President was taken away from the Interstate Commerce Commission by the "Act To provide for the operation of transportation systems while under Federal control," etc. (40 Stat. 451, 456), but the

power over them after hearing remained, and the power to suspend was restored when "The Transportation Act, 1920," approved February 28, 1920, became effective (41 Stat. 456, 487). The action of the Director General of Railroads, under consideration in this case, may, therefore, be treated as if it had been taken by a carrier subject to the act.

Without more, these references to the Interstate Commerce Act are sufficient to show that if the proposed change in the tariffs, and in the rule, which we are considering, constituted a change of classification or of regulation within the meaning of the Commerce Act, there was ample and specific provision made therein for dealing with the situation through the Commission,—for suspending the supplement or rule or annulling either or both if investigation proved the change to be unreasonable, and for providing for just treatment of shippers in the future. Strangely enough, it is a shipper not a carrier which here seeks to exclude the latter from this extensive jurisdiction of the Commission.

The certificate does not state what the purpose of the Director General of Railroads was in attempting to make the proposed change, but whether it was to permanently refuse to carry artificial silk as freight because of its value or of the risk involved, or for any other reason, or whether the action was taken to clear the way for putting into effect a commodity rate higher than the first-class rate (as might be done under appropriate conditions, *Chamber of Commerce, Houston, Texas,* v. *International & Great Northern Ry. Co.,* 32 I. C. C. 247, 255; *Wheeling Corrugating Co.* v. *Baltimore & Ohio R. R. Co.,* 18 I. C. C. 125, 126), in either case it was necessary that the published classification of rates should be withdrawn by change of the tariffs on file and that notice should be given, through rule or regulation, that the silk would not be accepted for shipment in the future. Thus the supple-

ment involved a change in the contents of previously filed classification lists and in a rule or regulation of the carriers.

That "exclusion is not classification" is an arresting but illusory expression. Classification in carrier rate-making practice is grouping,—the associating in a designated list, commodities, which, because of their inherent quality or value, or of the risks involved in shipment, or because of the manner or volume in which they are shipped or loaded, and the like, may justly and conveniently be given similar rates. To exclude a commodity from all classes is classification of it in as real a sense and with as definite an effect as to include it in any one of the usual classes. To strike artificial silk from the first class and to include it in the "prohibited list" which, for any cause, the carrier refuses to accept as freight, classifies it and sets it apart in a group subject to special treatment, as much as if it had been changed to the second class. We cannot doubt that the "exclusion" in this case was an attempted "classification," and that the proposed change in rule 3 was an attempted change of regulation, applicable to artificial silks, and that when challenged by the shipper the reasonableness of both presented a question for decision within the exclusive initial jurisdiction of the Interstate Commerce Commission.

Confirmation of this conclusion may be found in *Lake-and-Rail Butter and Egg Rates*, 29 I. C. C. 45. There carriers on the Great Lakes issued a supplement to their tariffs (as was done here) adding to the list of commodities which would not be accepted for shipment, among other articles, butter, poultry and eggs. This was defended on the ground that such traffic required refrigeration at a cost greater than it would bear. Upon complaint by shippers to the Interstate Commerce Commission that the proposed action was unreasonable, the supplement was promptly suspended and upon full hearing it was held

that the refusal to carry such commodities in the past and the attempt to fortify such refusal for the future by filing tariffs declining in terms to receive them, were unduly prejudicial to the traffic involved, and, the request of shippers for such transportation being held reasonable, an order that it be furnished was authorized.

The contention of the carriers, faintly made, that the common law and not the Interstate Commerce Act furnished the measure of their obligation to the public was promptly overruled by the Commission, informed, as it was, by wide experience in traffic affairs and in the administration of the act.

The importance to the commerce of the country of the exclusive, initial jurisdiction which Congress has committed to the Interstate Commerce Commission need not be repeated and cannot be overstated (*Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Baltimore & Ohio R. R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481; *Morrisdale Coal Co.* v. *Pennsylvania R. R. Co.*, 230 U. S. 304; *Minnesota Rate Cases*, 230 U. S. 352; *Texas & Pacific Ry. Co.* v. *American Tie Co.*, 234 U. S. 138, 146; *Pennsylvania R. R. Co.* v. *Clark Coal Co.*, 238 U. S. 456, 469, and *Loomis* v. *Lehigh Valley R. R. Co.*, 240 U. S. 43, 49), and, concluding, as we do, that this case falls plainly within that jurisdiction, the question asked by the Circuit Court of Appeals must be answered in the negative.

*Question answered, No.*


Dissenting: Mr. Justice McKenna, Mr. Justice Van Devanter, Mr. Justice Pitney and Mr. Justice McReynolds.