**SULLIVAN v. MISSOURI PACIFIC LINES et al.**

**No. 454.**

District Court, W. D. Texas, San Antonio Division.

Oct. 5, 1931.

804

Davies & Davies, of San Antonio, Tex., for plaintiff.

Terry, Cavin & Mills, of Galveston, Tex., and T. D. Cobbs, Jr., and Templeton, Brooks, Napier & Brown, all of San Antonio, Tex., for defendants.

WEST, District Judge.

Suit by original and supplemental petitions was instituted in the state district court of Dimmit county, Tex., on March 12, 1931, and by defendants regularly removed here on April 18, 1931. Plaintiff obtained immediate mandatory injunctions forbidding defendants, originating and connecting interstate carriers, from demanding any higher rate than a certain second class carload lot rate, alleged to be regularly and lawfully in effect. Specific allegations were that the plaintiff was the sole owner of the Plant Farms business and engaged in shipping vegetables, cabbage plants, onion plants, and other farm products in interstate commerce, with principal office in Dimmit county, Tex., within this federal judicial district. The record from the state court consists of copies of plaintiff's original and supplemental petitions instituting suit, copies of mandatory restraining orders, petition, and bond for removal and the court's order removing. The issues raised by the motion to dismiss are tested by this record.

The petition for removal and the motions to dismiss contain like allegations. The sufficiency of plaintiff's initiatory pleadings as a matter of law is denied, and it is contended that the facts therein stated do not entitle plaintiff to the relief sought and obtained, but, on the contrary, show that the state court was without jurisdiction to entertain the subject-matter of the suit.

The subject-matter in controversy stated in plaintiff's original petition follows:

"That onion plants and cabbage plants are dormant plants under classification No. six (6) on page No. 363 a rate ordered and ·classified by the Interstate Commerce Commission and which became effective on June 15, 1930.

"And that under said classification in carload lots said dormant plants would take a rate No. 4 or B.

"That at the beginning of the season of plant shipping in December, 1930, the said defendant gave to this plaintiff the said dormant plant rate; that is to say, a rate which was thirty-two and one-half (32½) per cent. of a first-class rate and much less than a second-class rate.

"That for full illustration and information for the court, under said ratings:

"If one hundred per cent. (100%) is taken as a first-class rate, a second-class is eighty-five (85) per cent. of the first-class and a rating No. 4 or B is thirty-two and one-half per cent. (32½) of the first class rate.

"And that under said rating above, the plaintiff has shipped about 39 carloads of

said onion plants and cabbage plants, and has made his price to his patrons and customers based upon said rate for dormant plants.

"That on the 9th day of March, 1931, the said defendant refused to continue said rating, but insists on a rating of second-class or eighty-five per cent. (85%) of the 100%—being 53% higher than the dormant plant rate given to this shipper."

Other allegations declare, in substance, that to require the plaintiff to pay the second class rate rather than the lower rate in effect would cause him immediate loss of $14,000; that said increased rate exacted is unlawful and confiscatory.

The defendants moved to dismiss the bill, upon the grounds that the state district court was without jurisdiction to entertain the controversy set out in plaintiff's petition, because involving a matter of tariff classification, an administrative function with which the Interstate Commerce Commission had exclusive original jurisdiction.

The issue made by the motions presents the question whether the plaintiff is entitled to have his plants assessed an interstate rate, which is 32½ per cent. of the first class rate; or whether, as contended by defendants, plaintiff's plants should bear a second class rate, being 85 per cent. of the first class rate; or whether the commodity moving in carload lots should not be classed as "green onions with tops," and charged a rate of 38 per cent. of the first class rate.

The motions set out in detail the classification of rates that have application to dormant plants and those that are not dormant as sustaining the right of the carriers to charge the higher rate, and shows in detail why the questions presented are administrative and within the special field of inquiry conferred upon the Interstate Commerce Commission. There are allegations to the effect that the higher rate charged was regularly filed in accordance with the requirements of law concerning interstate carriers; also that the issue tendered to the state district court for determination was whether the plants were, for rate-making purposes, to be put in one of three tariff classes. This was characterized as an attempt to render effective a disputed classification of interstate rates through the mandatory injunction of a state court, being a matter exclusively intrusted either to the Interstate Commerce Commission or a District Court of the United States.

Plaintiff's original petition declares the increased rate demanded to be "unlawful and confiscatory." In the supplement the prayer is that defendants be restrained from refusing to accept plaintiff's tenders of cars of dormant onion and cabbage plants, "upon rate B as classified and promulgated by the Interstate Commerce Commission." On March 26, 1931, the state court issued the mandatory injunctive restraining orders.

Section 9 of title 49, USCA, "Transportation," declares: "Any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. * * * *"

The plaintiff did not complain to the Commission nor did he sue the carriers in a District Court of the United States of competent jurisdiction for damages, but sued in a district court of the state of Texas for damages and mandatory injunctions as stated. That a rate is confiscatory is declaratory and inclusive of its unreasonableness. When the rate is published, only the Interstate Commerce Commission can pass on that question. A shipper seeking reparation predicated on the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426–448, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075. After the suit was removed to this court, plaintiff filed a second amended original petition, in which his claim of confiscation is abandoned. The issue of jurisdiction raised in the motions to dismiss stands upon the record as brought from the state court. The averments in the amended petition are not material to that inquiry. The matter for determination is, Which of three published interstate rates is applicable? The plaintiff contends for a certain rate because his cabbages and onions "with tops" are dormant plants and the rate fixed as being 32½ per cent. of the first class rate. The defendants claim that the cabbages and onions "with tops" were not dormant, and as such were subject to a rate

equal to 85 per cent. of the first class rate. It also appears that the commodities in question may be included in another classification carrying a rate of 38 per cent. of the first class rate. Plaintiff urges that the meaning of the word "dormant," as applied to cabbage and onion plants, is common and general, which involves the construction of a rate regulation, a question of law, and not administrative.

■ Changes in the classification of a commodity and in the rules determining its acceptance for shipment are within the jurisdiction of the Interstate Commerce Commission. A proposed amendment to a freight tariff schedule filed with the Interstate Commerce Commission canceling published rates attempts both a classification and a change of regulation. The shipper complaining of such changes should apply for relief to the Interstate Commerce Commission, and the District Court was without jurisdiction in the first instance to annul changes and enjoin carriers from complying with them. Director General v. Viscose Co., 254 U. S. 498, 41 S. Ct. 151, 65 L. Ed. 372.

It is apparent from the plaintiff's state court pleadings and defendants' petitions for removal that the primary questions for decision are as to what classification the cabbages and onions shipped should take and which of three rates mentioned should apply.

■ When, in an action by a shipper to recover charges exacted by a carrier under an Interstate tariff, the rights of the parties depend entirely upon a legal construction of the tariff, involving no question of fact either in aid of the construction or in other respect, and no question of administrative discretion, the courts have jurisdiction without preliminary resort to the Interstate Commerce Commission. But, where the tariff of an interstate carrier is to be construed, and it is necessary to determine upon evidence as to the meaning of words other than common or general, or the existence of incidents alleged to be attached by usage to the transaction, the preliminary determination must be made by the commission; and not until this determination has been made can a court take jurisdiction of the controversy. Great Northern Railway Company v. Merchants' Elevator Company, 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943. A footnote to this decision, page 295 of 259 U. S., 42 S. Ct. 477, 66 L. Ed. 943, cites many cases in which the jurisdiction of the court is sustained without preliminary resort to the Commis-

sion, the questions involved being solely of construction of a tariff and not of administrative discretion; also cites cases where the court declined jurisdiction because of failure to first resort to the Commission, the questions presented calling for the exercise of administrative discretion. A survey of these cases is convincing that the questions in the case at bar are administrative and involve the exercise of powers within the cognizance of the Interstate Commerce Commission.

■■ Since the jurisdiction of the inquiry, if administrative, is vested by the Transportation Act in the Commission, and, if judicial, in a District Court of the United States, it appears that the state court is without jurisdiction to entertain plaintiff's action for damages and injunction. This is declared in Venner v. Michigan Central Railroad Company, 271 U. S. 127, 46 S. Ct. 444, 70 L. Ed. 868; Standard Oil Company v. United States, 283 U. S. 163, 51 S. Ct. 421, 75 L. Ed. 926. It is logical to reason that, if the court of first instance had no jurisdiction, then none could be conferred on this court by the removal.

In Lambert Run Coal Company v. Baltimore & Ohio Railroad Company, 258 U. S. 377, 42 S. Ct. 349, 66 L. Ed. 671, a shipper sued in a state court to enjoin the railroad company from following rules for car distribution prescribed by the Commission. The defendant removed the case to the United States District Court, and filed a motion to dismiss because of lack of jurisdiction in the state court, the Commission not having taken any action, and because neither the state nor federal court had jurisdiction. The decision turns upon the fact that the Commission had issued certain "rules," and that the statutes required the United States to be a party to such a suit, and likewise required suit to be brought in a federal District Court. Title 28, USCA § 41 (27) and note, and § 46; Judicial Code, §§ 207 and 208. While no rule of the Commission is in issue here, plaintiff must proceed for remedy either through the Commission or the federal District Court. The procedure in Lambert Run Coal Co. v. B. & O. R. Co., supra, page 382 of 258 U. S., 42 S. Ct. 349, 351, 66 L. Ed. 671, by suit in a state court to enjoin enforcement of Commission "rules," is precisely the same as adopted here. The court holds: "As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction

over them by the removal. * * * If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."

For the reasons stated, the court holds: That the issue submitted to the state court by the plaintiff required the exercise of an administrative function vested solely in the Interstate Commerce Commission by the laws of the United States. Consequently, the state court was without jurisdiction. That, the state court being without jurisdiction, the federal District Court acquired none by the removal procedure. That defendants' motions to dismiss should be sustained and the case dismissed.

An order carrying these views into effect will be entered in due course.