## ONTARIO FREIGHT LINES CORPORA-TION v. UNITED STATES et al.

### Civil Action No. 9834.

District Court, D. New Jersey.
March 22, 1948.

Charles E. Cotterill, of New York City, and Edmond J. Dwyer, of Newark, N. J., for plaintiff.

Edgar H. Rossbach, U. S. Atty., of Newark N. J., John J. Corcoran, Asst. U. S. Atty., of Jersey City, N. J., John F. Sonnett, Asst. Atty. Gen., and Edward Dumbauld, Sp. Asst. to Atty. Gen., for defendant United States.

Daniel W. Knowlton, Chief Counsel, and Edward M. Reidy, Asst. Chief Counsel, both of Washington, D. C., for defendant Interstate Commerce Commission.

Before McLAUGHLIN, Circuit Judge; FAKE and MADDEN, District Judges.

MADDEN, District Judge.

The plaintiff herein seeks to set aside a cease and desist order of the Interstate Commerce Commission directing the plaintiff to give shippers from Brooklyn, New

York, to Syracuse, New York, the benefit of a cheaper intrastate route rather than a more expensive interstate route used by plaintiff to transport such shipments.

Plaintiff's attack upon the order is threefold: First, that the Commission was without authority in law to enter such an order; second, that the action of the Commission is arbitrary and capricious and not founded upon the evidence before it; and third, that the report and order entered thereon is not supported by any explication or sufficient explication as required by law.

The Interstate Commerce Commission has intervened in accordance with the provisions of Section 212 of the Judicial Code, 36 Stat.L. 1150, 28 U.S.C.A. § 45a. Hearing was held at which time the record before the Interstate Commerce Commission, including the exhibits, was introduced in evidence, oral argument heard and briefs submitted.

It appears that the plaintiff is a motor carrier of freight for hire and holds a certificate from the Interstate Commerce Commission for an interstate route and a certificate from the State of New York for an intrastate route or routes.

The plaintiff's certificated interstate route was from Brooklyn, New York, through the Holland Tunnel to plaintiff's terminal at East Rutherford, New Jersey, thence to Hillburn, New York, Newburgh, Kingston, Albany, Schenectady, Amsterdam, Palatine Bridge, Utica, Oneida and Syracuse.

The plaintiff's interstate route, as found by the Commission to be generally used by plaintiff, was from Brooklyn, through the Holland Tunnel to plaintiff's terminal at East Rutherford, New Jersey, thence to Hillburn, New York, Newburgh, Kingston, Middlebury, Palatine Bridge, Utica, Oneida and Syracuse.

The plaintiff's certificated intrastate route was from Brooklyn, New York, up through Manhattan to Tarrytown, Peekskill, Poughkeepsie, Hudson, Albany, Sche-

nectady, Amsterdam and Palatine Bridge where it joined the other route or routes.

The record discloses that the plaintiff was carrying a great deal of freight for the Great Atlantic & Pacific Tea Co., from Brooklyn, New York, to Syracuse, New York, in 1943 and 1944, and charged the shipper according to the more expensive interstate route over which the shipments actually moved while the shipper demanded that its goods move over the cheaper intrastate route and that it (shipper) receive the benefit in its shipping charges. With this request plaintiff refused to comply and the shipper then complained to the Interstate Commerce Commission.

The portion of the report and decision of the Commission complained of is as follows:

"We further find that the action of the defendant in transporting the shipments under consideration herein over its interstate route, instead of over its lower rated intrastate route, was an unreasonable practice, and that a reasonable practice would have been to transport such shipments over its authorized intrastate route and to apply to such transportation the lower intrastate rates legally applicable thereto.

"The record does not clearly establish the manner in which complainant's shipments are being transported at present. The defendant (plaintiff here) will be expected to cease and desist from the practice found unlawful. If it does not, and the matter is called to our attention by the complainant, we shall give consideration to the entry of an appropriate order. The proceeding will be closed."

With this review of the history of the matter, we take up the first question, i. e.: "Did the Commission have the authority in law to determine that plaintiff had been guilty of unreasonable practice and make the order it did?"

. The pertinent part of the statute (quoted in full in the margin[1]) is as follows:

---

[1] "Complaints to and investigation by commission; power of commission to fix reasonable rates, regulations, etc. Any person, State board, organization, or body politic may make complaint in writing to the Commission that any such rate, fare, charge, classification, rule, regulation, or practice in effect or proposed to be put

"Whenever * * * the Commission shall be of the opinion that any * * * fare or charge * * * is or will be unjust or unreasonable * * * it shall determine and prescribe the lawful rate, fare, or charge * * * to be observed * * * or practice thereafter to be made effective."

Speaking of the Commission's power in relation to motor freight, Mr. Justice Rutledge said, for the Supreme Court, in Eastern-Central Motor Carriers Association et al. v. United States et al., 321 U.S. 194, 205, 64 S.Ct. 499, 505, 88 L.Ed. 668:

"But with the evolution of other forms of carriage, particularly motor carriage, *and the Commission's acquisition of control over their rates and operations, a new situation arose. The Commission's task no longer was merely the regulation of a single form of transport, to secure reasonable and nondiscriminatory rates and service.* It became, not merely the regulator, but to some extent the coordinator of different modes of transportation. *With the addition of motor and water carriage to its previous jurisdiction over rails, it was charged not only with seeing that the rates and services of each are reasonable and not unduly discriminatory,* but that they are co-ordinated in accordance with the National Transportation Policy, as declared by the later legislation. *This, while intended to secure the lowest rates consistent with adequate and efficient service* and to preserve within the limits of the policy inherent advantages of each mode of transportation, at the same time was designed to eliminate destructive competition not only within each form but also between or among the different forms of carriage." (Italics ours.)

So that it seems clear to this court that the Interstate Commerce Commission had the legal authority to make the cease and desist order of which plaintiff complains.

We come now to the second question. "Was the action of the Commission arbitrary and capricious and not founded upon the evidence before it?"

To aid this court in its determination of whether the Interstate Commerce Commission acted in an arbitrary and capricious manner an examination of the proceedings before that body is in order. This examination will disclose the following in chronological order:

July 7, 1944—Complaint filed.

August 5, 1944—Answer filed.

November 1, 1944—Hearing held by examiner.

February 17, 1945—Report and recommendations of examiner.

March 17, 1945—Exceptions to report filed.

---

into effect, is or will be in violation of this section or of section 317. Whenever, after hearing, upon complaint or in an investigation on its own initiative, the Commission shall be of the opinion that any individual or joint rate, fare, or charge, demanded, charged, or collected by any common carrier or carriers by motor vehicle or by any common carrier or carriers by motor vehicle in conjunction with any common carrier or carriers by railroad and/or express, and/or water for transportation in interstate or foreign commerce, or any classification, rule, regulation, or practice whatsoever of such carrier or carriers affecting such rate, fare, or charge or the value of the service thereunder, is or will be unjust or unreasonable, or unjustly discriminatory or unduly preferential or unduly prejudicial, it shall determine and prescribe the lawful rate, fare, or charge or the maximum or minimum, or maximum and minimum rate, fare, or charge thereafter to be observed, or the lawful classification, rule, regulation, or practice thereafter to be made effective and the Commission shall, whenever deemed by it to be necessary or desirable in the public interest, after hearing, upon complaint or upon its own initiative without a complaint, establish through routes and joint rates, fares, charges, regulations, or practices, applicable to the transportation of passengers by common carriers by motor vehicle, or the maxima or minima, or maxima and minima, to be charged, and the terms and conditions under which such through routes shall be operated: Provided, however, that nothing in this chapter shall empower the Commission to prescribe, or in any manner regulate, the rate, fare, or charge for intrastate transportation, or for any service connected therewith, for the purpose of removing discrimination against interstate commerce or for any other purpose whatever." 49 U.S.C.A. § 316(e).

April 16, 1945—Submitted with oral argument to Division 2, Interstate Commerce Commission.

March 12, 1946—Decision and report of Division 2, one Commissioner dissenting.

June 17, 1946—Petition for reconsideration by full Commission membership.

July 29, 1946—Reply of complainant.

September 12, 1946—Order denying reconsideration.

■ We must also review the record in the light of whether the Commission had before it any substantial evidence to support its findings and not in the light of whether we agree with their opinion, for it was said by Mr. Justice Lamar in Atcheson, Topeka and Santa Fe Railway Company v. United States, 232 U.S. 199–221, 34 S.Ct. 291, 297, 58 L.Ed. 568:

"All these are matters committed to the decision of the administrative body, which, in each instance, is required to fix reasonable rates and establish reasonable practices. The courts have not been vested with any such power. They cannot make rates. They cannot interfere with rates fixed or practices established by the Commission unless it is made plainly to appear that those ordered are void."

And Mr. Justice Black in Interstate Commerce Commission v. Mechling, 330 U.S. 567–574, 67 S.Ct. 894, 898:

"Judicial review of the findings of fact and the expert judgments of the Interstate Commerce Commission where the Commission acts within its statutory authority is extremely limited."

Also by Mr. Justice Black in United States v. Chicago Heights Trucking Co., 310 U.S. 344–352, 60 S.Ct. 931, 935, 84 L.Ed. 1243:

" 'It is not disputable that from the beginning the very purpose for which the Commission was created was to bring into existence a body, which from its peculiar character, would be most fitted to primarily decide whether from facts, disputed or undisputed, in a given case, preference or discrimination existed.' And where a court substituted 'its judgment as to the existence of preference for that of the Commission, on the ground that where

there was no dispute as to the facts it had a right to do so, [the court] obviously exerted an authority not conferred upon it by the statute.' "

See also The Los Angeles Switching Case, Interstate Commerce Comm. v. Atcheson T. & S. F. R. Co., 234 U.S. 294, 34 S.Ct. 814, 58 L.Ed. 1319; Board of Trade of Kansas City et al. v. United States et al., 314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432; Director General of Railroads et al. v. Viscose Co., 254 U.S. 498, 41 S.Ct. 151, 65 L.Ed. 372; and in United States et al. v. Pierce Auto Freight Lines, Inc. et al., 327 U.S. 515–535, 66 S.Ct. 687, 698, 90 L. Ed. 821. Mr. Justice Rutledge said:

"We think the court misconceived not only the effects of the Commission's action in these cases but also its own function. It is not true, as the opinion stated, that ' * * * the courts must in a litigated case, be the arbiters of the paramount public interest.' This is rather the business of the Commission, made such by the very terms of the statute. The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done."

In this light, did the Commission have evidence to support its decision? It was undisputed before the Commission that plaintiff had two authorities; one the intrastate route being cheaper than the other the interstate route. The Commission held as a matter of law:

"The complainant having shown that the defendant (plaintiff here) maintained different rates on the same traffic over two or more open routes, the burden was cast upon the defendant to rebut the presumption that it acted unreasonably in transporting the unrouted shipments over the higher rated route."

■ We think this is a correct interpretation of the law for Mr. Justice Brandeis, speaking for the Supreme Court in Northern Pacific Railway Co. v. Solum, 247 U.S. 477–482, 38 S.Ct. 550, 552, 62 L.Ed. 1221, said:

"Where a railroad company operates two lines of railroad between the same points,

and the freight rate over one line is less than such rate over the other line, if other conditions are reasonably equal, it is the duty of the company to transport shipments between those points over the line which will give the shipper the benefit of the cheaper rate. To justify transporting such shipments over the other line, and thereby compel the shipper to pay the higher rate, *the company must show* that such line was chosen by the shipper, or that the circumstances or exigencies were such that a proper regard for the interests of the shipper precluded the use of the cheaper line." (Italics ours.)

With this burden legally placed upon plaintiff, did the plaintiff overcome it before the Commission? It (plaintiff) argued that by reason of grades in the highways, traffic conditions and congestion in the areas covered by the intrastate route; the use of different drivers by reason of labor union contracts and commitments; that the interstate route was less damaging to its equipment; that the interstate route was shorter than the intrastate route; therefore, it should be allowed to use the interstate route and charge the higher rate.

The Commission found as a fact that the distance over the open, lower rated intrastate route is only 16 miles or 5.6 percent greater than that over the interstate route generally used on the class of traffic involved and held that the existence of a route less costly to operate does not of itself establish that it would be unreasonable to require the defendant to use the more costly route.

An examination of the record before the Commission discloses that at no time did the plaintiff here attempt to prove that the rates on the cheaper intrastate route were unreasonably low and that the carrier would lose money on shipments carried over such route at such rates. Likewise, plaintiff is silent as to whether it has ever made application to the New York State Authority to increase its rates over such intrastate route but bottomed its contention before the Commission that it was unreasonable to make it use the longer intrastate route and charge lower rates when it could use the shorter and more

economical route and charge the higher rate.

With this contention, and after almost a year of study, the majority of Division 2 of the Commission did not agree. Under all the facts and circumstances the Commission felt plaintiff had engaged in an unreasonable practice. One member of the Commission did not agree with the majority. However, it is to be noted that this member did not dissent because of any difference of opinion as to the law involved, but on what he felt was a question of what was a reasonable or unreasonable practice.

Men, being human and susceptible to differences of opinion, will never agree on a hard and fast rule on reasonableness and unreasonableness. It must be fixed as in this case by a majority of the Commission after their review of the facts before it, for as Mr. Justice Lamar said for the Supreme Court in Mitchell Coal & Coke Co. v. Pennsylvania Railroad Co., 230 U.S. 249–257, 33 S.Ct. 916, 920, 57 L.Ed. 1472:

"But where the suit is based upon unreasonable charges or unreasonable practices, there is no law fixing what is unreasonable and therefore prohibited."

■ Without commenting on whether we agree with the Commission we hold that there was evidence before that body to sustain the position adopted by them and that their action was neither arbitrary nor capricious.

We, therefore, come to the question, has the Commission in its findings and judgment made sufficient explication?

Explication, like the term reasonable, is general and no set rule will fit all cases alike. Examination of the cases leads to the conclusion that difference of opinion as to whether there is or is not sufficient explication arises because of the facts of the particular case and not because of a different view of the law involved.

We, therefore, think it sufficient to reiterate the fundamental ideas of the law of explication in these matters and then state whether in this particular instance the explication by the Commission is sufficient to meet the test.

On this question, Mr. Justice Rutledge, in Eastern Central Carriers Association v. United States, supra, said [321 U.S. 205, 64 S.Ct. 508]:

"In returning the case we emphasize that we do not question the Commission's authority to adopt and apply general policies appropriate to particular classes of cases, so long as they are consistent with the statutory standards which govern its action and are formulated not only after due consideration of the factors involved *but with sufficient explication to enable the parties and ourselves to understand, with a fair degree of assurance, why the Commission acts as it does.* (Italics ours.)

\* \* \* \* \* \*

"We only require that, whatever result be reached, enough be put of record to enable us to perform the limited task which is ours."

And Mr. Justice Cardozo in Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282–287, 54 S.Ct. 692, 694, 78 L. Ed. 1260, said:

"The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. In this instance the care and patience with which the Commission fulfilled its appointed tasks are plain, even to the casual reader, upon the face of its report."

And Judge Meaney, speaking for this court in Fine & Jackson Trucking Corporation v. United States et al., D.C., 65 F. Supp. 443, 444, said:

"It was squarely recognized that there is a duty on the Interstate Commerce Commission to make 'basic or essential findings required to support [its] order.' Without such basic findings, intelligent review of the proceedings of the Commission would be impossible and petitions for such review would be idle gestures."

And Mr. Justice Rutledge in United States et al. v. Pierce Auto Freight Lines, Inc., supra, said [327 U.S. 515, 66 U.S. 696]:

"Only the most hypercritical reading of the findings, and one which ignores the report's explicit statements in many respects, could construe them as meaning only that each operation was required by public convenience and necessity without any regard to competitive consequences of granting both."

So with these to point the way we look to see whether the Commission has sufficiently explained its position or reasons.

In effect, the Commission said in its report to plaintiff: You have two lines, one cheaper than the other. Under the Solum case you must give to the shipper the benefit of the cheaper rate unless you can show us that such rate or action is unreasonable. We have listened to all your evidence and examined your exhibits. You have not carried the burden that was yours and we, therefore, find that your practice of charging the higher rate has been unreasonable.

What more could the Commission say without practically reviewing quite minutely the evidence adduced. An explication will be more than sufficient for one man in a particular case while it would not be sufficient to another man if it were twice as verbose.

■ Applying the test: Has the Commission made sufficient explication to enable the parties hereto and this court, on this application to review, to understand with a fair degree of assurance why the Commission acted as it did?

In our opinion the decision and report more than meet this test.

For the reasons expressed herein the action will be dismissed.