**NATIONAL MOTOR FREIGHT TRAF-FIC ASSOCIATION, Inc., Common Carrier Conference—Irregular Route
and
Regular Common Carrier Conference, Plaintiffs,
v.
UNITED STATES of America
and
Interstate Commerce Commission, Defendants
and
Delaware Valley Freight Terminal, Excelsior Truck Leasing Co., Inc.,
and
Pennsylvania Railroad Company, Intervening Defendants.
Civ. A. No. 2450–64.**

United States District Court
District of Columbia.
June 23, 1965.

Bryce Rea, Jr., Washington, D. C., for plaintiffs.

Thomas H. Ploss, Washington, D. C., for Interstate Commerce Commission.

John H. D. Wigger, Dept. of Justice, Washington, D. C., for the United States.

Harold E. Mesirow, Macleay, Lynch, Channing & Bernhard, Washington, D. C., for Delaware Valley Freight Terminal.

J. Raymond Clark, Washington, D. C., for Excelsior Truck Leasing Co.

Paul F. McArdle, Covington & Burling, Washington, D. C., for Pennsylvania R. Co.

Before WASHINGTON, Circuit Judge, and HOLTZOFF and WALSH, District Judges.

LEONARD P. WALSH, District Judge.

This matter came before the Court on plaintiffs' motion to convene a three-judge court, which motion was granted. Briefs were filed, said Court was convened, and all parties heard.

Plaintiffs National Motor Freight Traffic Association, Inc., the Common Carrier Conference—Irregular Route, and the Regular Common Carrier Conference, seek to set aside, enjoin, and annul an order of the Interstate Commerce Commission[1] which dismissed their complaint seeking a finding by the Commission that the activities of Delaware Valley Freight Terminal (Delaware) were those of a freight forwarder in interstate commerce without appropriate authority from the Commission, and seeking a Commission finding that Pennsylvania Railroad Company (Pennsylvania) and Excelsior Truck Leasing Com-

1. National Motor Freight Terminal, et al., Docket No. MC-C 3192, published at 323 I.C.C. 560.

pany (Excelsior) were aiding and abetting Delaware in these activities. Plaintiffs clearly having standing to challenge the validity of the Commission's order in this Court. National Motor Freight Traffic Assn. v. United States, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). Delaware, Pennsylvania, and Excelsior all have been granted leave to intervene in this action.

The basic issue before the Commission was, under the proper interpretation of the statutes involved, whether Delaware and the other intervenors here, jointly or severally, were shown to be conducting a freight forwarder operation and, as such, are subject to the licensing requirements of Part IV of the Interstate Commerce Act. The Act, in Section 402(a) (5) defines "freight forwarder" as follows:

"The term 'freight forwarder' means any person which (otherwise than as a carrier subject to part I, II, or III of this Act) holds itself out to the general public as a common carrier to transport or provide transportation of property, or any class or classes of property, for compensation, in interstate commerce, and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, *and* performs or provides for the performance of break-bulk and distributing operations with respect to such consolidated shipments, *and* (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, *and* (C) utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to part I, II, or III of this Act." (Emphasis supplied).

Section 402(c) reads as follows:

"The provisions of this part shall not be construed to apply (1) to the operations of a shipper, or a group or association of shippers, in consolidating or distributing freight for themselves or for the members thereof, on a nonprofit basis, for the purpose of securing the benefits of carload, truckload, or other volume rates, or (2) to the operations of a warehouseman or other shippers' agent, in consolidating or distributing pool cars, whose services and responsibilities to shippers in connection with such operations are confined to the terminal area in which such operations are performed."

The licensing provision of Part IV of the Act, Section 410(a) (1), is as follows:

"No person shall engage in service subject to this part unless such person holds a permit, issued by the Commission, authorizing such service; * * *".

Finally, the phrase "service subject to this part" is defined in Section 402(a) (7) as meaning:

" * * * any or all of the service in connection with the transportation in interstate commerce which any person undertakes to perform or provide as a freight forwarder * * *."

In the hearing before the Commission, the only testimony offered by the complainants was from two of the partners of Delaware, the adverse party, and from a representative of Jones Motor Company, Incorporated, which has handled trailers in connection with the service offered by Delaware.

Applying the elements of the Section 402(a) (5) definition, as well as the other sections set out above, the Commission hearing examiner, after hearing, made the following findings which were adopted by the Commission (at page 572 of its order):

" * * * it is not shown that Delaware's operations include all of the essential functions of freight forwarding, or that there is an assumption of responsibility on their part for the transportation of shipments from point of receipt to point of

destination. Delaware disclaims any responsibility for a shipment that they are to 'marry' and move in plan III service until they execute a rail bill of lading for such movement. This disclaimer is affirmed by complainants' witness, a representative of Jones, that Jones assumes all common carrier responsibility for the movement from New York [meant to be "York"] to the rail marshaling yards at Philadelphia. Payment for such movement is made by the shipper direct to Jones. Thus, as the responsibility for the involved traffic from York is in Jones it cannot be said that the operations of Delaware are not confined to the terminal area in which their operations are performed. Further, as no shipper using Delaware's services adduced any testimony, the record is void of any evidence that shippers using the services of Delaware look to Delaware for the overall responsibility of their traffic. To the contrary there is affirmative evidence that where there are claims for damages by shippers, Delaware merely furnishes the shipper with the original bill of lading with instructions for the shipper to resolve the matter with the carriers involved.

Concerning the break-bulk and distribution, the record will not support the conclusion that such services and responsibilities are not confined to their respective terminal areas * * * If anything, the facts tend to refute such presumptions and dictate that Delaware has no connection with or control over distributor. For example, this is shown by Delaware being unaware of the transaction made between the distributor and ultimate consignee; the rail carrier and not Delaware notifying the distributor of trailer arrivals; charges for distribution are un-

known to Delaware as the distributor bills the shipper direct for services rendered; and Delaware makes no payments to the distributors * * (T)here is no showing that two shippers with mated trailers to the same point could not request a distributor other than the one suggested and have such request honored by Delaware. Further, in the absence of evidence showing actual charges made by local cartage carriers, Delaware's claim that the drayage charges appearing in their brochure are suggestive based on local rates cannot be disputed."

The examiner then concluded that the complainant had not adduced sufficient evidence to prove its complaint,—that the evidence of record failed to show that Delaware is operating in violation of Part IV of the Act.

■ First of all, it must be stated that this Court has only a limited scope of review of orders of the Interstate Commerce Commission. Even though the Court might reach a different conclusion on the facts presented, the Commission's order should not be set aside if it is not arbitrary or capricious or unlawful, and if the findings are adequate and supported by substantial evidence. Administrative Procedure Act, § 10(e), 5 U.S.C. § 1009(e). Accelerated Transport-Pony Express, Inc. v. United States, 227 F. Supp. 815 (D.C.Vt.1964), aff'd 379 U.S. 4, 85 S.Ct. 43, 13 L.Ed.2d 21 (1964). Mitchell Bros. Truck Lines v. United States, 225 F.Supp. 755 (D.C.Oregon, 1963), aff'd 378 U.S. 125, 84 S.Ct. 1657, 12 L.Ed.2d 744 (1964).

■ In National Motor Freight Traffic Ass'n v. United States, decided by this Court in 1962,[2] plaintiff here argued, in unsuccessfully attempting to have the Court set aside an Interstate Commerce Commission ruling, that, in order to hold itself out as a freight forwarder, one must in all instances of representing

2. 205 F.Supp. 592, aff'd 371 U.S. 223, 83 S.Ct. 311, 9 L.Ed.2d 273, rehearing denied but affirmance explained at 372 U.S. 246,

83 S.Ct. 688, 9 L.Ed.2d 709 (1963), cited earlier on the question of standing.

shippers actually perform all four functions he is authorized to perform under Section 402(a) (5). This Court there held that as long as forwarders *proffer* all of these services, they have fulfilled their obligation under their certificate and do qualify as freight forwarders. In order for plaintiff here to have prevailed before the Commission, it must have been demonstrated to the Commission that Delaware does actually hold itself out to assemble, and consolidate, and break-bulk and distribute consignor-shippers' freight, and assume responsibility for the property from point of receipt to point of destination. " '[O]ne who does all the things that a forwarder does is subject to regulation, no matter what he may choose to call himself.' " Freight Consolidators Cooperative, Inc. v. United States, 230 F.Supp. 692, 698 (S.D.N.Y., 1964).

■ With the entire record before it, this Court cannot say that the interpretation of the statute by the Commission was erroneous, or that the Commission's findings that Delaware's activities are confined to one terminal area and do not include assumption of responsibility from point of receipt to point of destination, were not supported by substantial evidence.

Plaintiffs urge, however, that the Commission erred in concluding that the burden was upon the plaintiffs to establish the material allegations of their complaint. They contend to the contrary that the burden was upon Delaware to prove that it came under the above-set-out Section 402(c)—that the Act is remedial in nature, and that therefore, "exemptions" therefrom are to be strictly construed. Furthermore, they allege that one claiming to be embraced within such an exemption has the burden of proving such. They cite Freight Con-

solidators Cooperative, Inc. v. United States, supra, and other cases [3] in support of their argument.

■ This Court is not convinced by plaintiffs' arguments. First of all, all of the cited cases were ones in which the Government, not a private complainant, brought suit claiming a violation of law. Also, in each case, the specific facts which would exempt the defendant from liability were within the exclusive possession of the defendant. No such situation has been shown here. Furthermore, the procedural statutes involved place the burden of proof on the proponent of a rule or order.[4] And it is the general rule that " * * * the burden of proof lies upon him who affirms, not him who denies." Philadelphia Co. v. Securities and Exchange Commission, 84 U.S.App.D.C. 73, 83, 175 F.2d 808, 818 (1949). There is no doubt that before the Commission, plaintiff here was the party who affirmed and Delaware the party who denied. In addition, the Commission, in other cases, including Freight Consolidators Cooperative, Inc., v. United States, supra, has treated·Section 402(c) as a "clarifying provision" rather than as a true exemption from Section 402(a) (5). The legislative history of the statute, as well as its language, clearly would justify such an interpretation.[5]

Finally, though the findings of the Commission would seem to place Delaware under the provisions of Section 402(c) (2) of the Act, there was no such specific finding and thus, no finding of an exemption. There was merely the finding that there was a failure " * * * to adduce sufficient evidence upon which the examiner may properly reach a conclusion that the business of Delaware is a forwarder within the meaning of section 402(a) (5)." [6]

---

3. F. T. C. v. Morton Salt Co., 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948); United States v. Borden Company, 370 U.S. 460, 82 S.Ct. 1309, 8 L.Ed.2d 627 (1962).

4. Administrative Procedure Act, Sections 5 and 7, 5 U.S.C. §§ 1004 and 1006, Inter-

state Commerce Act, Section 403(f), 49 U.S.C. § 1003(f).

5. House Report No. 1172, 77th Cong., 1st Sess., pp. 5–6.

6. Pp. 572–3 of the Commission's order.

**606**

The Court must conclude that the order appealed from is not arbitrary or capricious, and that the interpretation of the statute by the Commission was lawful, and that the findings adopted by the Commission are supported by substantial evidence.

In accordance with the above, it is by the Court this 23rd day of June, 1965,

Ordered, that the plaintiffs' action be, and it hereby is, dismissed, and the order of the Interstate Commerce Commission is affirmed.

WASHINGTON, Circuit Judge, concurs in the result.