**OVERNITE TRANSPORTATION COMPANY and National Motor Freight Traffic Association, Inc., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Toy Manufacturers of U. S. A., Intervening Defendant.**

**Civ. A. No. 4171.**

United States District Court
E. D. Virginia,
at Alexandria.

Argued Feb. 13, 1967.
Decided Feb. 20, 1967.

Transportation Company, a common carrier by motor vehicle, and National Motor Freight Traffic Association, Inc., an agency association of such carriers, to cancel a scheduled increase in the classification rating of stuffed animals, dolls and toys, in boxes, in less-than-truckload quantities (LTL). Overnite and National (carriers) now sue under 28 U.S.C. §§ 1336(a), 1398(a) and 2321–2323 to set aside the order.[1] The Commission and the United States answered, as did a shipper-intervenor. We deny the prayer and dismiss the action.

The proceeding was begun by the filing of schedules by the carriers with the Commission under § 217(c) of the Interstate Commerce Act, 49 U.S.C. § 317(c), proposing to raise the classification rating of these items from Class 150 to Class 200.[2] As this would mean a substantial stepping-up of the freight charges, it was protested by shippers and the matter came on for decision by the Commission pursuant to § 216(g) of the Act, 49 U.S.C. § 316(g), which pertinently provides:

"(g) Whenever there shall be filed with the Commission any schedule stating a new * * * classification for the transportation of * * * property by * * * carriers by motor vehicle, * * * or any rule * * * thereunder, the Commission is authorized and empowered upon complaint of any interested party or upon its own initiative at once * * * to enter upon a *hearing concerning the lawfulness of such rate, fare, or charge* * * *. At any hearing involving a change in a rate, fare, charge, or classification, or in a rule, regulation, or practice, the *burden of proof shall be upon the carrier to show that the proposed changed rate, fare, charge, classification, rule,*

Bryce Rea, Jr., and Edward W. Hummers, Jr., Washington, D. C. (Rea, Cross, Knebel & Kinnaird, Washington, D. C., on brief), for plaintiffs.

Raymond M. Zimmet, Atty., I. C. C., Washington, D. C., and John D. Schmidtlein, Asst. U. S. Atty., Alexandria, Va. (Robert W. Ginnane, Gen. Counsel, I. C. C., Donald F. Turner, Asst. Atty. Gen., Claude V. Spratley, Jr., U. S. Atty., Howard E. Shapiro, Atty., Dept. of Justice, on brief), for defendants.

John F. Bohman, Gardner, Mass., and James J. Faris, Alexandria, Va., for intervening defendant.

Before BRYAN, Circuit Judge, and LEWIS and BUTZNER, District Judges.

ALBERT V. BRYAN, Circuit Judge:

The Interstate Commerce Commission on April 26, 1966 ordered the Overnite

---

1. Investigation and Suspension Docket No. M–19591, Stuffed Animals, Dolls Or Toys, LTL Classification Rating, decided February 4, 1966.

2. 49 U.S.C. § 317(c) "No change shall be made in any rate, fare, charge, or classification, or any rule, regulation, or prac-

tice affecting such rate, fare, charge, or classification, or the value of the service thereunder, specified in any effective tariff of a common carrier by motor vehicle, except after 30 days notice of the proposed change filed and posted in accordance with paragraph (a) of this section. * * * *"

*regulation, or practice is just and reasonable."* (Accent added.)

At the hearing the proponent carriers were directed to adduce their evidence first, the protestant-shippers then following with their proof, and the carriers allowed a rebuttal opportunity, each cross-examining as desired. Upon submission and study the Commission reported that the new classification was unlawful, saying:

"We conclude that the respondents [carriers] have failed to sustain their statutory burden of proof.

"We find that the proposed changed rating has not been shown to be just and reasonable."

"Classification in carrier rate-making practice" was defined in Director General of Railroads v. Viscose Co., 254 U.S. 498, 503, 41 S.Ct. 151, 153, 65 L.Ed. 372 (1921) as "grouping,—the associating in a designated list, commodities, which, because of their inherent quality or value, or of the risks involved in shipment, or because of the manner or volume in which they are shipped or loaded, and the like, may justly and conveniently be given similar rates. * * *"

Conceded by both the carriers and the shippers, a classification evolves from a consideration of many factors in respect to the consignment, e. g., shipping weight per cubic foot, value of the freight, its liability to loss or damage and classification ratings on other comparable commodities. The focus of argument in this case is the weight per cubic foot, commonly known as the density of the commodity. A low density would give support to the higher classification sought by the carriers presently. Its importance is compendiously pointed up in the brief here of the United States and the Commission in this explanation:

"Transportation charges generally are assessed on the basis of the weight of shipment; the rates are stated in terms of so many cents per one hundred pounds, and a shipper naturally must pay more to have a heavy shipment transported than he does for the transportation of a light shipment. However, a carrier is limited in how much freight it can carry by the capacity of its equipment, and in any one piece of equipment it can carry a heavier load of freight having a low cubic displacement that [than] it can shipments of high cubic displacement. Therefore, in determining the rate relationships of various commodities, that is, in grouping them for the assessment of transportation charges, it is natural that the carrier would rate freight of low density higher than freight of high density, all other things being equal. Feathers should be rated higher than lead, as, indeed they are."

The issue of density was reduced to whether stuffed animals, dolls and toys had an average density of less than 4 pounds per cubic foot. It was thus narrowed when the Commission found that the other factors would not warrant the greater rating of Class 200 for articles averaging 4 pounds or more in density. The evident implication was that if the density were below 4 pounds, the higher rate classification would have been granted. Decision of the question then went against the carriers when the Commission declared that the carriers had failed to bear "their statutory burden", that is to prove a density of less than 4 pounds.

■ Plaintiff-carriers' sally on the Commission's order is mounted on its manner of appraising the evidence in reaching a conclusion on whether the carriers had fulfilled the obligation of proof imposed by the statute. The error first assigned is disregard of § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 1006(c) [3] demanding that no "rule or order be issued except upon consideration of the whole record". The point is that the Commission separately examined the evidence of the carriers and that of the

3. Subsequent to the Commission's decision the Administrative Procedure Act was recodified without substantive change. The provision now appears at 5 U.S.C. § 556 (d).

shippers, weighed one against the other and thereby found that the shippers' evidence of more than 4 pounds rebutted the carriers' evidence of less than 4 pounds. In this argument the carriers urge that there was no conflict in the respective proofs, and the record looked at as a whole, indisputably established the density asserted by the carriers.

It is true that the Commission did state that the carriers' evidence was "of no greater probative worth than that submitted by the protestants". However, throughout, the report manifests a consideration by the Commission of the entire record in coming to its ultimate finding. This is demonstrated by its careful sharpening of the issues before it, as well as by its analysis of all the evidence. We see no strength in this assignment of error.

The carriers' second assignment is that the Commission violated § 8(b) of the APA, 5 U.S.C. § 1007(b) [4] prescribing that all agency decisions include "a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact * * * presented on the record". Specifically, the accusation is that the Commission cannot rest its determination upon a mere finding of deficiency of proof. More particularly, the charge is that the Commission was obligated to fix the average density of the commodities in suit definitely at a certain arithmetic figure.

■■ The APA, as we read it, does not uphold this contention. The report of the Commission fully serves as the statement required. Moreover, the Act anticipates a decision based on a paucity of proof. Thus § 7(c), on which the carriers premised their first error assignment supra, provides that " * * * the proponent of a rule or order shall have the burden of proof". Hence, under the law the Commission was not only at liberty, but was compelled, on appraisal of all the evidence to say so if it was not convinced that the commodities under study weighed less than 4 pounds. Cf.

National Motor Freight Traffic Ass'n v. United States, 242 F.Supp. 601, 605–606 (D.D.C.1965) (3-judge court).

Our review of the evidence does not leave us with the conviction that a lower average density poundage was inescapably proved by substantial evidence. In short, the Commission has made a finding that the carriers had not proved their case. The Commission, as the trier of fact, had the duty to assay the proof and we cannot say that its conclusion is without rational basis. A fortiori, we can understand that the Commission could believe the evidence too imprecise to provide an exact mathematical determination of density. In neither respect has the Commission failed to follow the directions of the APA.

The complaint will be dismissed and the action stricken from the docket.

---

4. Now recodified at 5 U.S.C. § 557(c). See footnote 3, supra.