

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

June 4, 1969



Honorable Wilson E. Speir
Director
Texas Department of Public Safety
5805 North Lamar
Austin, Texas 78751

Opinion No. M-411

Re: Definition of "specialized motor carrier" and "base incorporated municipality" under Article 911b, V.C.S.

Dear Mr. Speir:

In your recent request concerning the above-captioned matter, you referred to the amendments of the definition of "motor carrier" in Article 911b, Sec. 1 (g), Vernon's Texas Statutes, by Acts, 1965, 59th Legislature, Chapter 290, page 572.

Specifically, you request an answer to the following two questions:

1. Does the term "specialized motor carriers" cover only those carriers certified by the Railroad Commission as "specialized motor carriers" or does it include any carrier satisfying the definition in Art. 911b, Sec. 1 (i)?

2. Does the term "base incorporated municipality" mean (1) the municipality where the shipment either originates or terminates; (2) the municipality where the trucker or carrier has his base of operation; (3) any municipality which is contiguous to both the municipality where the shipment originates and the municipality where the shipment terminates; or (4) something not covered in (1), (2), or (3)?

Replying to your first question, we must look to Article 911b, Section 1, which states, in part:

"When used in this Act unless expressly stated otherwise:

\*\*\*

(i) 'Specialized motor carrier' means any person owning, controlling, managing, operating, or causing to be operated any

- 2040 -

motor-propelled vehicle used in transporting, over any public highway in this state, over irregular routes on irregular schedules, for compensation and for the general public with specialized equipment, property requiring specialized equipment in the transportation and handling thereof; provided, that the term "specialized motor carrier" as used in this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns; and, provided further, the term "specialized motor carrier" as used herein shall include those carriers who engage or desire to engage exclusively in the transportation of livestock, livestock feedstuff, agricultural products in their natural state, broom corn, grain, farm machinery, timber in its natural state, milk, wool, mohair, or property requiring specialized equipment as that term is hereinafter defined, or any one, or more, of the foregoing named commodities." [Emphasis added.]

Where the Legislature has itself defined the term, that definition is controlling and one may not resort to a general meaning, practice, custom, or any other meaning. Central Power & Light Co. v. State, 165 S. W. 2d 920 (Tex. Civ. App. 1942, error ref.); Humble Oil & Refining Co. v. State, 158 S. W. 2d 336 (Tex. Civ. App. 1942, error ref.) Thus, "specialized motor carrier," wherever that term is used in Article 911b, must carry the statutory definition contained in Section 1(i), unless expressly stated to mean otherwise. The term "specialized motor carrier" is not expressly otherwise defined in the statute. Therefore, the answer to your first question is that the term "specialized motor carrier" includes all carriers falling within the statutory definition whether certificated by the Railroad Commission of Texas or not.

Replying to your second question, we refer you to a most thorough discussion of the legal meaning of the term "base municipality" as used in Article 911b and found in State v. Lomeda Corp., Civil Docket Number 67-4559-A, District Court of Dallas County, 14th Judicial Dist. of Texas, October 24, 1968, by Judge Clarence Guittard. Because of the importance of Judge Guittard's opinion and the fact that the judgment has become final and it is unreported and the only legal authority on this question in Texas, we will quote at length therefrom, with modifications necessary for continuity:

" . . . The State has brought the action for a declaratory judgment construing the 1965 amendment to Article 911b, Vernon's Texas Civil Statutes. All parties agree that this amendment was enacted to avoid at least some of the effects of the decision of the Supreme Court in State v. Acel Delivery Service, Inc., 388 S. W. 2d 930 (Tex. S. Ct., 1965).

"One of the principal problems is the meaning of the term 'base municipality' as used in Subparagraph (4) of Section 1 (g) of Article 911b.

- 2041 -

Under Section 1 (g) the term 'motor carrier' does not include vehicles operating between points:

" '(4) Wholly within the limits of a base incorporated municipality and any number of incorporated cities, towns and villages which are immediately contiguous to said base municipality.'

"The term 'base incorporated municipality' is not defined in the statute. The following possible constructions have been suggested:

(1) The city in which the carrier maintains its terminal;

(2) The city in which the particular truck involved in the shipment is based;

(3) The city where the shipment in question originates . . .

(4) Any city through which a shipment passes . . .

(5) Any principal city around which small municipalities are clustered. . .

(6) Any city about which the Railroad Commission has construed a "commercial zone" under authority of the second proviso of this section of the statute.

"[Apparently] the term 'base municipality is taken from the field of Federal motor carrier regulation under Part II of the Interstate Commerce Act. That act partially exempts from Federal regulation:

" 'The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of any such municipality or municipalities . . .' " 49 U.S.C.A. Paragraph 303 (b) (8).

"Pursuant to that act, the Interstate Commerce Commission has, with respect to various named major cities, defined zones 'adjacent to and commercially a part of' such cities, and has also adopted a general order, known as 'MC-37', the material provisions of which are as follows:

" 'Paragraph 1048.101. Commercial zones determined generally, with exceptions.' "

" 'The commercial zone of each municipality in the
United States . . . within which the transportation of
passengers or property, in interstate or foreign com-
merce . . . is exempt from all provisions of Part II,
Interstate Commerce Act, . . . shall be deemed to
consist of:

" '(a) The municipality itself, hereinafter called the
base municipality;
(b) All municipalities within the United States which are
contiguous to the base municipality;
(c) All other municipalities within the United States and
all unincorporated area within the United States which
are adjacent to the base municipality as follows:

" '(1) When the base municipality has a population less than
2, 500 all unincorporated areas within two miles of its cor-
porate limits and all of any other municipality any part of
which is within two miles of the corporate limits of the base
municipality,
(2) When the base municipality has a population of 2, 500 but
less than 25, 000, all unincorporated areas within 3 miles of
its corporate limits and all of any other municipality any part
of which is within 3 miles of the corporate limits of the base
municipality.
(3) When the base municipality has a population of 25, 000
but less than 100, 000, all unincorporated areas within 4
miles of its corporate limits and all of any other munici-
pality any part of which is within 4 miles of the corporate
limits of the base municipality, and
(4) When the base municipality has a population of 100, 000
or more, all unincorporated areas within  miles of its
corporate limits and all of any other municipality any part
of which is within 5 miles of the corporate limits of the base
municipality, and . . .' "

"The term 'base municipality' seems to have originated with
this order.  In its opinion delivered in connection with promul-
gation of the order, Ex Parte No. MC-37, Commercial Zones and
Terminal Areas, 46 M. C. C. 665 (1948), at p. 684, the ICC ex-
plains in a footnote:

" 'The term base municipality will be used hereinafter to des-
ignate the municipality whose commercial zone is under con-
sideration.' "

"The ICC further explains that the commercial zone of each municipality is separately determined, and may, therefore overlap other commercial zones:

" 'The result is that the commercial zone of any particular municipality will overlap to some extent the zone of each contiguous or closely adjacent municipality. This should, however, cause no confusion. The statute exempts only purely local operations within any one commercial zone. Where such zones overlap, the exemption of local operations within each may not be tacked or combined to cover operations not confined to a single zone.

" 'It will also happen in some instances that the commercial zone of a small municipality, as herein determined, will be completely contained within the commercial zone of some adjacent larger municipality. When this occurs, the smaller zone becomes unimportant and, as a practical matter, may be discharged, for transportation confined to it will also be performed wholly within the larger encompassing zone.' "

"It thus appears that under MC-37, every municipality has a 'commercial zone' with respect to which motor carrier operations are partially exempt, even though interstate commerce may be involved, and every municipality is, with respect to such 'commercial zone' a 'base municipality.' Thus under the facts stipulated here, for purposes of Federal regulation, Dallas is a 'base municipality', which has a 'commercial zone' consisting of the area within its corporate limits, all areas within the corporate limits of immediately contiguous municipalities, all unincorporated areas within five miles of the Dallas corporate limits, and all other municipalities any part of which are within five miles of the Dallas corporate limits. Such a zone would include Irving, Grand Prairie, and Garland. Likewise, each of these cities is a 'base municipality' under MC-37, with a commercial zone similarly defined, except that the distance factor would be four miles or less instead of five because of the smaller population. The 'commercial zone' of Irving, under Federal regulation, would include Dallas, Grand Prairie, Arlington and Fort Worth, but not Garland or Benbrook.

"The 1965 amendment to Article 911b, now under consideration, was evidently drafted with the Federal statute and

ICC regulations in mind, since it employs the terms 'base municipality' and 'commercial zone,' which had not previously been used in state legislation. However, we cannot say that these terms are used in precisely the same sense they are used in the Federal statutes and regulations. Under the Federal law each municipality has a 'commercial zone', and the ICC order merely defines such zone; whereas under Article 911b, a 'commercial zone' exists only where the Railroad Commission, after notice and public hearing, finds a necessity for such a zone and prescribes its limits.

"The question is, then, does 'base municipality' under Article 911b mean only a municipality as to which the Commission has by formal order prescribed a 'commercial zone?' I do not believe this is what the Legislature intended, for two reasons. In the first place, the provision concerning 'commercial zones' expressly excludes 'operations of carriers of commodities in bulk in tank vehicles and all specialized motor carriers.' No such exclusion is prescribed with respect to the area within a 'base municipality' and its contiguous municipalities. In the second place, the provision concerning 'base municipalities' is set forth as the principal provision of Subdivision (4) of Subsection (g) of Section 1, whereas the provision concerning 'commercial zones' is contained in a proviso which follows that principal provision. It would be illogical for the meaning of the language in the principal provision to depend on the proviso, and I cannot assume that the Legislature so intended.

"I conclude, therefore, that the provision concerning 'base municipalities' must be construed independently of the proviso. As so construed, with the background of MC-37 in mind, it seems that 'base municipality' probably means any incorporated municipality in the state, when considered in connection with the incorporated municipalities immediately contiguous to it. So considered, any such municipality, with its immediately contiguous municipalities, constitute a statutory zone, like the area defined in the three preceding enumerated subdivisions, within which property may be transported without regulation. In addition to these four statutory zones of non-regulation, the second proviso following Subparagraph (4) authorizes the Railroad Commission to prescribe zones of wider area, but not applicable to tank vehicles and specialized carriers.

"Under this construction of the statute, the 'base municipality' is not necessarily the municipality in which the carrier maintains its terminal, or where the trucks are based, or where the shipment originates, or which is surrounded by smaller municipalities, or upon which a 'commercial zone' is constructed by the Railroad Commission. Rather it is any municipality to which other munici-palities are immediately contiguous. A shipment between points within the area of such 'base municipality' and its immediately con-tiguous municipalities is exempt from regulation under the 1965 amendment to Article 911b, regardless of whether the shipment originates in the 'base municipality' or one of its contiguous municipalities. Indeed, the shipment need never actually pass through the 'base municipality' if the point of origin and point of destination are both within municipalities which are contiguous to the 'base municipality.' . . .

"Application of this construction to the different fact situations stipulated in this case results in the following con-clusion:

"A. Irving, through Fort Worth, to Benbrook. This ship-ment is exempt because Fort Worth, the 'base municipality,' is contiguous to both Irving and Benbrook.

"B. Fort Worth, through Arlington, Grand Prairie and Dallas, to Garland. This shipment is not exempt, unless it is within a 'commercial zone' prescribed by the Railroad Commission, because there is no 'base municipality'to which both Fort Worth and Garland are contiguous.

"C. Irving, through Grand Prairie and Arlington, to Fort Worth. This shipment is exempt because Irving is contiguous to Fort Worth, and either may be considered the 'base municipality'. The points of origin and destination are controlling, and the fact that other municipalities may be traversed is immaterial. (It may be noted that where the point of origin or destination is in an unincorporated area, it is material under Subparagraph (3) to determine whether the shipment passes through more than one incorporated area.)

"D. Irving to Dallas. This shipment is exempt because the two cities are contiguous and either may be considered the 'base municipality'.

"The question remains as to whether defendant Lomeda may carry household goods from Benbrook to Garland without regulation. As noted in example B above, the question depends on whether such a shipment would be within the 'commercial zone' provision of Article 911b. It is stipulated that the Railroad Commission has by its General Order No. 45, established a 'commercial zone' which includes Irving, Fort Worth, Benbrook, Arlington, Grand Prairie, Dallas and Garland. Thus the 'commercial zone' would include both the point of origin and the point of destination, and the question is whether such transportation of household goods would be the operation of a 'specialized motor carrier, which is excepted from the 'commercial zone' proviso. This term is defined in the Subsection (i) of Section 1 as follows:

" 'Specialized motor carrier' means any person owning, controlling, managing, operating, or causing to be operated any motor-propelled vehicle used in transporting, over any public highway in this state, over irregular routes on irregular schedules, for compensation and for the general public with specialized equipment, property requiring specialized equipment in the transportation and handling thereof; provided, that the term 'specialized motor carrier' as used in this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns; and, provided further, the term 'specialized motor carrier' as used herein shall include those carriers who engage or desire to engage exclusively in the transportation of livestock, livestock feedstuff, agricultural products in their natural state, broom corn, grain, farm machinery, timber in its natural state, milk, wool, mohair, or property requiring specialized equipment as that term is hereinafter defined, or any one, or more of the foregoing named commodities.

" 'For the purpose of this Act, the term 'specialized equipment' includes, but is not limited to block and tackle, hoists, cranes, windlasses, gin poles, winches, special motor vehicles, and such other devices as are necessary for the safe and proper loading or unloading of property requiring specialized equipment for the transportation and handling thereof.

" 'For the purpose of this Act, the term 'property requiring specialized equipment' is limited to (1) oil field equipment, (2) household goods and used office furniture and equipment,(3) pipe used in the construction and maintenance of water lines and pipelines, and (4) commodities which by reason of length, width, weight, height, size, or other physical characteristics require the use of special devices, facilities, or equipment for their loading, unloading, and transportation. ' "

"Section 5a of the statute provides:

" 'The Commission is hereby given authority to issue upon application and hearing as provided in this Act, to those persons who desire to engage in the business of a 'specialized motor carrier, ' certificates of convenience and necessity in the manner and under the terms and conditions as provided in this Act. . . .' ".

" 'Section 5b. No motor carrier shall transport oil field equipment, household goods, used office furniture and equipment, livestock, milk, livestock feedstuff, grain, farm machinery, timber in its natural state, wool or mohair, on any highway in this State unless there is in force with respect to such carrier and such carrier is the owner or lessee of a certificate of convenience and necessity issued pursuant to a finding and containing a declaration that a necessity requires such operation or a contract carrier permit issued by the Commission, authorizing the transportation of such commodity or commodities; . . .' "

"It is stipulated that defendant Lomeda is engaged in the business of transporting household goods and other commodities for compensation or hire. It contends, however, that it is not a 'specialized carrier' excepted from the 'commercial zone' exempted because it is not a 'certificated' specialized carrier. Under Section 5a (b), no 'motor carrier' is permitted to transport household goods on any highway without a certificate. Lomeda is in violation of that provision if it is within the definition of 'motor carrier' in Subsection (g) of Section 1, and it is within that definition unless

it is excluded by one of the subparagraphs or provisions of that subsection. When it transports household goods from Fort Worth to Garland, it is not excluded by the 'base municipality' provision in Subparagraph (4), as I have already found. Neither is it excluded by the 'commercial zone' provision, because it is engaged in an activity, namely, transportation of household goods, for which a specialized carrier certificate is required by the other provisions of the statute above quoted.

"Apparently it is Lomeda's contention that the reference to 'specialized motor carrier' in the 'commercial zones' provision means that specialized carriers with certificates to serve a certain territory cannot extend their operations within 'commercial zones' beyond the territory authorized in their certificates. The proviso would seem to have this effect, in so far as carriers with certificates are involved, but I see no basis for holding that the exclusion is limited to carriers with certificates. So far as I can tell, it is intended to apply to both regulated and unregulated carriers which carry property, such as household goods, requiring special equipment. The fact that the 'tacking' proviso immediately preceding the 'commercial zones' proviso applies only to 'motor carriers authorized to serve' the areas exempted does not indicate an intention to limit the reference to 'specialized motor carriers' in the 'commercial zones' proviso to carriers which operate under certificates. The absence of any limiting language indicates that no special advantage for unregulated carriers was intended. I conclude that no carrier of property, including household goods requiring specialized equipment, can operate without a certificate unless its operations fall within one or more of the other exemptions in the statute.

"To the extent that Lomeda transports goods other than property requiring specialized equipment, it may operate throughout the Dallas-Fort Worth 'commercial zone.' Consequently, it may carry such other porperty from Fort Worth to Garland without a certificate." [Emphasis added.]

While the Lomeda case, supra, is limited to its particular facts, we believe th the holding and reasoning is sound. We conclude that "base municipality" is legally defined as any municipality to which other municipalities are immediately contiguous.

## SUMMARY

"Specialized motor carrier" means any carrier coming within the statutory definition contained in Article 911b, Section 1 (i), V.C.S., regardless of whether certificated by the Railroad Commission.

"Base municipality" as used in Article 911b, V.C.S., means any municipality to which other municipalities are immediately contiguous.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James H. Cowden
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman

Monroe Clayton
Bill Allen
Houghton Brownlee
Sam McDaniel

W. V. Geppert
Staff Legal Assistant

Hawthorne Phillips
Executive Assistant